Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM, PLLC**
140 Broadway, 46th Floor
New York, New York 10005
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Telephone: (305) 357-2107
E-Mail: fhedin@hedinllp.com

*Counsel for Plaintiff and Putative Class*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POOJA PRAKASH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAYFAIR LLC,<br><br>Defendant. | Case No. 2:26-cv-00263-DAD-CKD<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION**<br><br>Judge: Hon. Dale A. Drozd |

**TABLE OF CONTENTS**

I. INTRODUCTION ......................................................................................................... 1

II. ARGUMENT ............................................................................................................... 3

A. Defendant Has Not Met Its Burden of Proving an Arbitration Agreement Exists .............. 3

B. The Purported Sign-In Wrap Fails Both Prongs of the Chabolla Test ................................ 5

    1. The Context of the Transaction Weighs Against a Finding of Conspicuous Notice. 5

    2. The Google One Tap and Continued Use Do Not Establish Assent ........................ 7

    3. The Terms on the Checkout Page Were Not Reasonably Conspicuous.................... 8

    4. The Button-Text Mismatch Defeats Unambiguous Assent to the Terms................ 11

    5. Defendant's Cases Are Distinguishable ................................................................. 12

C. Plaintiff's Claims Fall Outside the Scope of the Arbitration Clause ................................. 13

D. The Arbitration Agreement Is Unconscionable ................................................................. 14

    1. Procedural Unconscionability ................................................................................ 15

    2. Substantive Unconscionability .............................................................................. 16

        (a) The mass-arbitration bellwether regime is substantively unconscionable ..... 17

        (b) The agreement is harshly one sided and only benefits Defendant ................. 21

        (c) The class-action waiver violates McGill and cannot be severed.................... 23

        (d) The unconscionability permeates the agreement and cannot be severed ....... 23

E. The Class-Action Waiver Cannot Be Severed ................................................................... 24

III. CONCLUSION .......................................................................................................... 25

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
 24 Cal. 4th 83 (2000) ................................................................................................ 16, 22, 23

*Benson v. Double Down Interactive, LLC,*
 798 F. App'x 117 (9th Cir. 2020) ............................................................................................. 8

*Berman v. Freedom Fin. Network, LLC,*
 30 F.4th 849 (9th Cir. 2022) ................................................................................................ 9, 11

*Bielski v. Coinbase, Inc.,*
 87 F.4th 1003 (9th Cir. 2023) ................................................................................................. 15

*Blair v. Rent-A-Ctr., Inc.,*
 928 F.3d 819 (9th Cir. 2019) .................................................................................................. 23

*Britt v. ContextLogic, Inc.,*
 2021 U.S. Dist. LEXIS 70414 (N.D. Cal. Apr. 9, 2021) ............................................................ 8

*Cavlovic v. J.C. Penney Corp.,*
 884 F.3d 1051 (10th Cir. 2018) .............................................................................................. 13

*Cayanan v. Citi Holdings, Inc.,*
 928 F. Supp. 2d 1182 (S.D. Cal. 2013) ................................................................................... 14

*Chabolla v. ClassPass, Inc.,*
 129 F.4th 1147 (9th Cir. 2025) ........................................................... 1, 2, 5, 8, 11, 25

*Chacon v. Barclays Bank Del.,*
 2024 U.S. Dist. LEXIS 211652 (C.D. Cal. Sept. 6, 2024) ........................................................ 5

*Cody v. Jill Acquisition LLC,*
 789 F. Supp. 3d 940 (S.D. Cal. 2025) ...................................................................................... 6

*Cruz v. Tapestry, Inc.,*
 113 Cal. App. 5th 943 (Ct. App. 2025) ..................................................................................... 6

*Diaz v. T-Mobile USA, Inc.,*
 2026 U.S. Dist. LEXIS 36588 (E.D. Cal. Feb. 20, 2026) ........................................................ 20

*Discover Bank v. Superior Court,*
 36 Cal. 4th 148 (2005) ........................................................................................................ 3, 25

*Fischer v. Rent-A-Ctr., Inc.,*
 No. 2:14-cv-00918-MCE-AC, 2014 U.S. Dist. LEXIS 101478 (E.D. Cal. July 22, 2014) .... 14

*Fuentes v. Empire Nissan, Inc.,*
 19 Cal. 5th 93, 341 Cal. Rptr. 3d 186, 582 P.3d 961 (2026) .................................................. 17

*Godun v. JustAnswer LLC,*
 135 F.4th 699 (9th Cir. 2025)..................................................................................5, 8, 11, 13
*Gorny v. Wayfair Inc.,*
 2019 U.S. Dist. LEXIS 95619 (N.D. Ill. June 7, 2019)..................................................... 12, 13
*Gostev v. Skillz Platform, Inc.,*
 88 Cal. App. 5th 1035 (2023)........................................................................................21
*Hageman v. Hyundai Motor Am., Inc.,*
 Nos. 24-7823, 25-656, 2026 U.S. App. LEXIS 8713 (9th Cir. Mar. 25, 2026) ...................... 15
*Harris v. iHeartMedia, Inc.,*
 No. 25-cv-06038-EKL, 2026 U.S. Dist. LEXIS 15564 (N.D. Cal. Jan. 6, 2026) ................. 1, 8
*Hasty v. Am. Auto. Ass'n,*
 98 Cal. App. 5th 1041 (2023)........................................................................................ 16
*Heckman v. Live Nation Ent., Inc.,*
 120 F.4th 670 (9th Cir. 2024)..........................................................2, 3, 15, 16, 17, 18, 24, 25
*Hernandez v. Event Tickets Ctr., Inc.,*
 No. 2:24-cv-01983-DAD-AC, 2026 U.S. Dist. LEXIS 45687 (E.D. Cal. Mar. 4, 2026) ... 6, 10
*Herzog v. Superior Ct.,*
 101 Cal. App. 5th 1280 (2024)........................................................................................ 7, 12
*Jackson v. Amazon.com, Inc.,*
 65 F.4th 1093 (9th Cir. 2023)........................................................................................ 14
*Jones v. Penney OpCo, LLC,*
 2025 U.S. Dist. LEXIS 148484 (E.D. Cal. Aug. 1, 2025)...........................................2, 13, 14
*Keebaugh v. Warner Bros. Entm't Inc.,*
 100 F.4th 1005 (9th Cir. 2024)........................................................................................ 5
*MacClelland v. Cellco P'ship,*
 609 F. Supp. 3d 1024 (N.D. Cal. 2022)................................................................................ 20
*McGill v. Citibank, N.A.,*
 2 Cal. 5th 945 (2017)........................................................................................................ 23
*McKeown v. SAS Retail Servs., LLC,*
 2025 U.S. Dist. LEXIS 258039 (N.D. Cal. Dec. 12, 2025)...................................................... 20
*Nelson v. Dual Diagnosis Treatment Ctr.,*
 77 Cal. App. 5th 643 (2022)........................................................................................ 22
*New England Country Foods, LLC v. VanLaw Food Prods., Inc.,*
 17 Cal. 5th 703 (2025)............................................................................................ 22, 23
*Nguyen v. Barnes & Noble, Inc.,*
 763 F.3d 1171 (9th Cir. 2014)........................................................................................ 10

*Nicholas v. Wayfair Inc.,*
 410 F. Supp. 3d 448 (E.D.N.Y. 2019) ...................................................................................... 13

*Nixon v. Vegas.com, LLC,*
 No. 3:25-cv-05688-CRB, 2025 U.S. Dist. LEXIS 265541 (N.D. Cal. Dec. 23, 2025) ............. 6

*Norcia v. Samsung Telecomms. Am., LLC,*
 845 F.3d 1279 (9th Cir. 2017) ................................................................................................... 3

*Ortiz v. T-Mobile USA, Inc.,*
 2026 U.S. Dist. LEXIS 49561 (C.D. Cal. Mar. 9, 2026)......................................................... 20

*OTO, LLC v. Kho,*
 8 Cal. 5th 111 (2019) ............................................................................................................... 15

*Pandolfi v. AviaGames, Inc.,*
 No. 23-cv-05971-EMC, 2024 U.S. Dist. LEXIS 159007 ............................................. 18, 19, 24

*Pandolfi v. AviaGames, Inc.*,
 No. 24-5817, 2025 U.S. App. LEXIS 22065 (9th Cir. Aug. 27, 2025) ............................. 17, 24

*Ponkey v. LLR, Inc.,*
 No. 24-5729, 2025 U.S. App. LEXIS 28455 (9th Cir. Oct. 30, 2025) .................................... 21

*Ramirez v. Charter Commc'ns, Inc.,*
 16 Cal. 5th 478 (2024) ............................................................................................................. 24

*Ramirez v. Trusper Inc.,*
 No. 24-6434, 2025 U.S. App. LEXIS 27192 (9th Cir. Oct. 20, 2025) .............................. 7, 12

*Rios v. HRB Digit. LLC,*
 807 F. Supp. 3d 975 (N.D. Cal. 2025) .................................................................. 16, 19, 21, 24

*Rodriguez v. Abercrombie & Fitch Trading Co.,*
 2026 U.S. Dist. LEXIS 68165 (S.D. Cal. Mar. 30, 2026) ....................................................... 13

*Rodriguez v. Wayfair LLC,*
 No. 2:25-cv-06910-DSF-AGR (C.D. Cal. Sept. 17, 2025) ...................................................... 12

*Rolufs v. Wayfair LLC,*
 No. 19SL-CC02114 (Mo. Cir. Ct. St. Louis Cnty. 2019)......................................................... 13

*Ronderos v. USF Reddaway, Inc.,*
 114 F.4th 1080 (9th Cir. 2024) .......................................................................................... 14, 15

*Schlueter-Beckner v. SimpliSafe, Inc.,*
 2025 U.S. Dist. LEXIS 146568 (N.D. Cal. July 30, 2025) ...................................................... 14

*Sellers v. JustAnswer LLC,*
 73 Cal. App. 5th 444 (Ct. App. 2021) ............................................................................... 5, 6, 8

*Semeraro v. Wayfair LLC,*
 No. PAS-L-2146-20 (N.J. Super. Ct. Law Div. 2021) ............................................................. 13

*Seneca v. Homeaglow Inc.,*
 No. 24-887, 2025 U.S. App. LEXIS 6725 (9th Cir. Mar. 19, 2025) ...................................... 11
*Wilson v. Huuuge, Inc.,*
 944 F.3d 1212 (9th Cir. 2019) ............................................................................................. 11
*Yousef v. Wayfair LLC,*
 No. COCE24010284 (Fla. 17th Cir. Ct. 2024) .................................................................... 13
*Zamani v. Carnes,*
 491 F.3d 990 (9th Cir. 2007) .............................................................................................. 14

**STAUTES**

       Cal. Civ. Code § 1668 ...........................................................................................22, 23
       Cal. Civ. Code § 1671(b)............................................................................................. 23

## I.    **INTRODUCTION**

Defendant Wayfair, LLC ("Defendant") has engaged in a fraudulent false-discount scheme designed to make consumers believe they are obtaining time-limited bargains, although the products are never sold at the higher reference prices. Those practices continue today unabated. That is because Defendant believes the laws do not apply to it because it inserted a terms-of-use hyperlink on its website. Defendant now moves to compel Plaintiff's claims to arbitration based on three screenshots that purportedly depict Plaintiff's agreement to arbitrate. ECF 13. None of those screenshots depict what Plaintiff saw.

Defendant first presents a Google One Tap prompt on a desktop that instructed Plaintiff to "See this site's privacy policy and terms of service." But as Defendant attests, Plaintiff did not use a desktop, she used her mobile phone to sign in. Declaration of Jonathan O'Callaghan ("O'Callaghan Decl.") ¶ 7. Wrong device, wrong screenshot. *Id.* Ex. A. Worse, the "terms of service" hyperlink does not even work — it redirects consumers to Defendant's Privacy Policy, not its Terms. Declaration of Adrian Gucovschi ("Gucovschi Decl.") ¶¶ 6, 8. And the prompt invites Plaintiff to "see" the terms, not "agree" to them. Faced with nearly identical facts, Judge Lee rejected Defendant's argument four months ago. *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 U.S. Dist. LEXIS 15564, at *10 (N.D. Cal. Jan. 6, 2026).

Defendant next contends that Plaintiff agreed to the Terms on its checkout page on April 30 and June 2, 2025, pointing to the advisal "By ordering, you agree to our privacy policy and terms of use." But Plaintiff did not click a "Place Your Order" button. She clicked a large purple "Continue with Klarna" button that redirected her off Defendant's website to a third-party installment-payment checkout page containing different terms and disclosures. Declaration of Pooja Prakash ("Prakash Decl.") ¶¶ 8-9, & Ex. B.  The mismatch is dispositive. *Chabolla v. ClassPass, Inc.*, 129 F.4th 1147, 1158 (9th Cir. 2025). Wrong transaction, wrong screenshot.

The evidence not only fails to establish assent—it also fails to provide constructive notice. Defendant's screenshot depicts a low-dollar item in Boston, with the "Payment info" conveniently redacted. Plaintiff's screenshots, on the other hand, depict the same mattress (including a haul-

away add-on service), delivered to the same address, on the same phone and browser. Prakash Decl. ¶¶ 5–11 & Exs. A–B. On Plaintiff's screen, the terms-of-use advisal was not visible without scrolling, and where it did appear, it was crowded by eight larger design elements and four identical purple hyperlinks. The terms-of-use link does not stand out. It "seems to fade into the irrelevancy of other aspects of the page." *Chabolla*, 129 F.4th at 1157.

Defendant asks the Court to find that Plaintiff waived her statutory right to a jury trial based on three factually and legally defective screenshots. That alone dooms the motion.

But even if Defendant could prove an arbitration agreement existed, (which it cannot), Plaintiff's claims would fall outside its scope. They arise from Defendant's pre-contractual deceptive pricing — conduct that would exist even if the parties "honored their contractual obligations in every respect." *Jones v. Penney OpCo, LLC*, 2025 U.S. Dist. LEXIS 148484, at *24–25 (E.D. Cal. Aug. 1, 2025) (Drozd, J.).

Even if the Court overlooked all that, arbitration would still not follow. The Federal Arbitration Act was enacted to place arbitration agreements "upon the same footing as other contracts" — not to let drafters engineer a forum calibrated to defeat consumer claims. That is what Defendant built. Its mass-arbitration regime batches claimants into 30 "bellwether" rounds with no ceiling, no opt-out, and no right to adequate representation. O'Callaghan Decl. Ex. C. The Terms expressly permit the arbitrator to "consider rulings in other arbitrations involving different individuals," converting Defendant's self-selected bellwethers into *de facto* precedent. The Ninth Circuit struck a materially identical regime in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 684–85 (9th Cir. 2024).

Defendant pairs that regime with a $100 liability cap and a one-year claim-bar rule that slashes California's limitations periods by 75%. Both limitations apply only to consumers. Defendant, by contrast, reserves for itself the right to bring intellectual-property claims in court — a remedy it augments with a $75,000-per-instance liquidated-damages clause that reaches not only infringement, but any consumer "investigating" an IP claim against Defendant. The asymmetry is stark: Defendant recovers $75,000 per infringement; the consumer owes $75,000 per investigation.

And because "investigating" is undefined, the clause deters any consumer inquiry into Defendant's conduct. That is not arbitration. It is a trap dressed as a forum.

Severance cannot cure the agreement. The arbitration agreement provides for severance only of provisions that interfere with arbitration, not of the unconscionable provisions within the arbitration scheme itself. Severance is also inappropriate where "unconscionability permeates the entire arbitration agreement." *Heckman*, 120 F.4th at 688–89. And without the arbitration agreement, Defendant's class-action waiver is independently unconscionable: it is part of "a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Id.* at 690 (quoting *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162 (2005)).

None of the courts that enforced Defendant's agreement dealt with the defective screenshots, advisal mismatch, or unconscionability architecture challenged here. For these reasons, and as further described herein, the Court should deny Defendant's motion in its entirety.

## II.     ARGUMENT

### A.     Defendant Has Not Met Its Burden of Proving an Arbitration Agreement Exists.

Defendant bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence" under the Rule 56 summary-judgment standard. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

Defendant's sole evidence is the declaration of Jonathan O'Callaghan and two exhibits attached to it. The declaration describes a desktop checkout page featuring a "Place Your Order" button and the advisal "By ordering, you agree to our privacy policy and terms of use." O'Callaghan Decl. ¶ 21, Ex. B. But that is not what Plaintiff saw or clicked. Plaintiff used Klarna, which rendered an entirely different checkout page and payment flow. Plaintiff was presented with her shipping address, payment information, and order summary alongside a large purple "Continue with Klarna" button that redirected her to Klarna's separate checkout page, where she encountered additional payment terms before completing her order. Prakash Decl. ¶¶ 8, 12 & Exs. B–C. The

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 2:26-CV-00263-DAD-CKD                                                          3

terms-of-use advisal did not render on Plaintiff's screen without scrolling — and she had no reason to do so. *Id.* ¶ 8 & Ex. A.

Plaintiff's own screenshots were taken using the same phone model, browser, account, and Klarna payment method used for her June 2, 2025 purchase, and depict the same mattress and Haul Away service delivered to the same address. *Id.* ¶ 10-11 & Exs. A–B. Defendant's exhibit, by contrast, depicts an entirely different product, with no Haul Away add-on, delivered to a fake "Test Account" in Boston, Massachusetts — with the "Payment Info" section redacted. O'Callaghan Decl., Ex. B. How an unnamed member of the "support team" generated this "replica" and what "records" O'Callaghan relied on go unexplained. *Id.* ¶ 20.

O'Callaghan also claims, without further detail, that this exhibit reflects what Plaintiff would have encountered when making her April 30, 2025 purchase. *Id.* That contention suffers from the same defects — compounded by the fact that O'Callaghan does not even identify what product Plaintiff purchased on that date. *Id.* And Plaintiff used the same Klarna payment method and was directed through the same checkout flow as she was on June 2. Prakash Decl. ¶ 13.

Defendant's account-creation evidence fares no better. The O'Callaghan Declaration states that Plaintiff created her account "using her mobile phone." O'Callaghan Decl. ¶ 7. But Exhibit A — the very screenshot Defendant submits to prove what Plaintiff saw — depicts the desktop version of the Google One Tap prompt. *Id.*, Ex. A. Defendant has not submitted a single screenshot showing what Google One Tap looked like on the device Plaintiff actually used.

Worse, the "terms of service" hyperlink on the Google One Tap prompt *does not lead to* Defendant's Terms. It redirects to Defendant's Privacy Policy — an entirely different document that does not contain the arbitration clause. Gucovschi Decl. ¶¶ 6, 8. Counsel tested the link on both a mobile phone and a desktop computer, and in both instances the hyperlink redirected to the Privacy Policy. *Id.* A consumer following the only available path to review Defendant's Terms would not have seen them.

Defendant's Terms themselves are presented in a format that obscures their scope. Defendant's exhibit renders the document on a zoomed-out desktop screen, placing the arbitration

clause on what appears to be page 4 of a 6-page document. O'Callaghan Decl. Ex. C. At actual desktop width, that clause sits on page 10 of 19. And on Plaintiff's mobile device — the device she actually used — the Terms run 41 pages, with the arbitration clause on page 21. Gucovschi Decl. ¶¶ 14-15, Exs. E–F. Defendant condensed a 41-page mobile document into a 6-page desktop exhibit.

In a motion whose foundation is three screenshots, producing the wrong ones dooms it. *See Chacon v. Barclays Bank Del.*, 2024 U.S. Dist. LEXIS 211652, at *9 (C.D. Cal. Sept. 6, 2024) (no valid arbitration agreement where defendant's evidence "merely state[d] Defendant's customary practices" without any evidence tying them to the plaintiff in particular).

### B.     The Purported Sign-In Wrap Fails Both Prongs of the *Chabolla* Test.

"To form a contract under California . . . law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (internal quotation marks and citation omitted). A sign-in wrap is enforceable only if both prongs are met: (1) reasonably conspicuous notice, and (2) an unambiguous manifestation of assent. *Chabolla*, 129 F.4th at 1154. "The nature of the service or goods offered and the visual aspects of every page of a multi-page transaction should be considered together." *Id.* at 1154-55. Defendant's account creation and checkout page fail both prongs.

#### 1.   *The Context of the Transaction Weighs Against a Finding of Conspicuous Notice.*

"[T]he context of the transaction is a non-dispositive factor under California law used to evaluate whether a website's notice is sufficiently conspicuous." *Keebaugh v. Warner Bros. Entm't Inc.*, 100 F.4th 1005, 1019 (9th Cir. 2024). Courts consider whether a reasonable user "contemplates entering into a forward-looking relationship that would be governed by terms and conditions." *Godun v. JustAnswer LLC*, 135 F.4th 699, 710 (9th Cir. 2025). Consumers typically do not expect such a relationship after one-time retail purchase. *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 476 (Ct. App. 2021) ("[I]t is questionable whether a consumer buying a single pair of socks, or signing up for a free trial, would expect to be bound by contractual terms").

This Court's decision in *Hernandez v. Event Tickets Center, Inc.*, No. 2:24-cv-01983-DAD-AC, 2026 U.S. Dist. LEXIS 45687 (E.D. Cal. Mar. 4, 2026) (Drozd, J.), is directly on point. There, the Court held that a one-time concert ticket purchase was not "the kind of transaction that contemplated entering a forward-looking relationship governed by terms and conditions" because the purchase required no account registration and no app download. *Id.* at *10–11. The same facts are present here. Plaintiff bought a single mattress at what she believed was a 43% discount. She did not subscribe, did not enroll in a recurring plan, and did not download an app. *See Cruz v. Tapestry, Inc.*, 113 Cal. App. 5th 943, 960 (Ct. App. 2025) (one-time online purchase of $79–$150 merchandise "do[es] not, without more, place a typical buyer on notice that she is entering into a forward-looking contractual relationship governed by dense website terms"); *Nixon v. Vegas.com, LLC*, No. 3:25-cv-05688-CRB, 2025 U.S. Dist. LEXIS 265541, at *5 (N.D. Cal. Dec. 23, 2025) (one-time hotel and ticket booking did not support a forward-looking relationship despite multiple site visits); *Cody v. Jill Acquisition LLC*, 789 F. Supp. 3d 940, 950 (S.D. Cal. 2025) (guest checkout for one-time retail purchase generates no forward-looking relationship).

The transaction context also defeats Defendant's Google One Tap theory. The prompt appeared on Defendant's homepage on April 26, 2025 — not at or near checkout. O'Callaghan Decl. ¶¶ 7–8. Plaintiff was merely browsing, not buying: she had selected no product, added nothing to her cart, and made no purchase that day. *Id.* Critically, Defendant's own records confirm that users "did not need to create an account to browse Wayfair's offerings" — Plaintiff could have viewed every product on the site without signing in at all. *Id.* ¶ 5.

Plaintiff could have viewed every product on the site without signing in at all. A reasonable consumer encountering a Google One Tap pop up that appears "across many different platforms and websites" (*id.* ¶ 6) while idly browsing a retail homepage, having decided to buy nothing, without signing up to a membership, would not understand that she was entering a binding contractual relationship with Defendant. Where account creation is optional and untethered to any purchase decision, a reasonable consumer has no reason to expect that clicking a convenience sign-in prompt would bind her to forty-one pages of legal terms she has never seen. *Sellers*, 73 Cal.

App. 5th at 476 (a consumer who "does not expect to be bound by contractual terms is less likely to be looking for them").

The prompt's own language confirms this. It describes Google's sharing of "your name, email address and profile picture." *Id.* Ex A That language suggests integration — that Google would autofill her information or streamline her browsing — not contract formation. Defendant's conduct confirms the point. If Defendant believed Plaintiff had already agreed to the Terms through the Google One Tap on April 26, there would be no reason to present the same Terms again on the checkout page. Defendant cannot credibly argue that Plaintiff formed a binding contract through an interface Defendant itself treated as insufficient to establish assent.

### 2. The Google One Tap and Continued Use Do Not Establish Assent.

Defendant argues that Plaintiff created an "account" by using the Google One Tap. MTC at 14. But the "terms of service" hyperlink in the Google's One Tap prompt does not lead to the Terms— on both mobile and desktop, it redirects to Defendant's Privacy Policy, an entirely different document. Gucovschi Decl. ¶¶ 6, 8. That defect alone is fatal. *Ramirez v. Trusper Inc.*, No. 24-6434, 2025 U.S. App. LEXIS 27192, at 2–3 (9th Cir. Oct. 20, 2025) ("At step one of the online enrollment process, even if the hyperlink provided reasonably conspicuous notice of the 'Telehealth Consent' terms, the link merely opened the 'Consent to Telehealth Services' pop-up window, which did not contain the Participant Agreement.").

Further, as discussed above, Plaintiff's click on the Google One Tap prompt was a convenience feature — it allowed her to "[u]se Wayfair.com with google.com" and described Google's sharing of "your name, email address and profile picture." O'Callaghan Decl., Ex. A. Nothing in that disclosure suggested that Plaintiff, or any other consumer, could possibly be agreeing to beyond what the disclosure itself described: the sharing of her profile information. *See Herzog v. Superior Court*, 101 Cal. App. 5th 1280, 1301 (2024) (refusing to enforce a clickwrap agreement where the terms were presented as pertaining "only to privacy issues").

Nor was there any unambiguous manifestation of assent. The Google One Tap disclosure states, "See this site's privacy policy and terms of service." An invitation to "see" the terms is not

equivalent to an advisal stating that you "agree" to them. *Harris v. iHeartMedia, Inc.* is directly on point. No. 25-cv-06038-EKL, 2026 U.S. Dist. LEXIS 15564, at *10 (N.D. Cal. Jan. 6, 2026) (refusing to enforce an arbitration agreement based on a virtually identical Google sign-in process because the "notices simply instructed the user to 'review' the terms of service. They did not indicate that the user was assenting to the terms of service by continuing.") (citing *Godun*, 135 F.4th at 712 ("The advisal lacked an explanatory phrase indicating that 'By clicking connect now' or 'By connecting,' or 'By chatting,' etc., she agreed to the terms.")). Here, the Google One Tap's invitation to "See" is no different from *Harris'* invitation to "review." Neither tells the consumer that they are agreeing to anything.

Defendant's reliance on *Britt v. ContextLogic, Inc.* is misplaced. 2021 U.S. Dist. LEXIS 70414 (N.D. Cal. Apr. 9, 2021). The interface in *Britt* stated unambiguously: "By clicking 'Sign In' or Facebook or Google you agree to the Wish Terms of Use and Privacy Policy." *Id.* at *13. That advisal explicitly named each third-party authentication method and used the verb "agree" (not "see"). *Id.* That is the difference between a binding advisal and a suggestion.

Defendant's argument that Plaintiff also agreed to the Terms by "continuing to use Wayfair.com to peruse products" is unfounded. MTC at 15. "Repeated use of a website or mobile application does not contribute to constructive notice because users are no more likely to stumble upon inconspicuous hyperlinks on their hundredth or thousandth visit than they are on their first." *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 119–20 (9th Cir. 2020).

### 3. The Terms on the Checkout Page Were Not Reasonably Conspicuous.

Defendant's checkout page also fails both prongs of *Chabolla*. In analyzing whether a webpage's terms are reasonably conspicuous, courts apply five factors: "(1) the size of the text; (2) the color of the text as compared to the background it appears against; (3) the location of the text and, specifically, its proximity to any box or button the user must click; (4) the obviousness of any associated hyperlink; and (5) whether other elements on the screen clutter or otherwise obscure the textual notice." *Sellers*, 73 Cal. App. 5th at 466. Defendant's checkout page fails all five. Defendant's *actual* checkout page — not the sanitized and inaccurate test-account replica —

contains "comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). A side-by-side comparison of the mobile screens here and in *Berman* is reproduced below. *Compare Berman*, 30 F.4th at 861, App'x B *with* Prakash Decl., Ex. B

 

On Plaintiff's iPhone, eight distinct elements cluttered the mobile checkout page: a Shipping Address section; Payment Info with Klarna's four-installment pricing summary; Delivery & Services with product specifications; a Home Service Powered by Angi scheduling box; the "Continue with Klarna" button; a Defendant Rewards banner ("Earn $11.00 in Rewards!"); an Order Summary; and a savings callout ("You are saving $230.00 on this order!"). Prakash Decl. Ex. B. The advisal itself — "By ordering, you agree to our privacy policy and terms of use" — sat in small font *below* the "Continue with Klarna" button. *Id.* This is precisely the kind of "screen

clutter" this Court has found to cut against conspicuousness. *Hernandez v. Event Ticket Ctr., Inc.*, 2026 U.S. Dist. LEXIS 45687, at *16–17 (E.D. Cal. Mar. 4, 2026) (Drozd, J.).



*Hernandez*, No. 2:24-cv-01983-DAD-AC, ECF 40.

Defendant's hyperlink design does not cure the failure. The "terms of use" and "privacy policy" hyperlinks are purple and underlined, but they appear in the same small font as the surrounding text, and they compete with four other *identical-looking* hyperlinks on the same page. Prakash Decl. ¶ 11, Ex. B. *See Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("It is unreasonable to expect a consumer to 'ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound.'"). And the purple coloring, far from standing out, blends into Defendant's dominant visual scheme: the "Continue with Klarna" button directly above is a large purple rectangle, and the Defendant Rewards banner uses the same purple branding. On a page where purple is the primary design color, purple hyperlinks do not stand out — they recede into the visual environment.

All of that assumes that the terms-of-use advisal was even visible on Plaintiff's checkout screen without scrolling. It was not. Prakash Decl. ¶ 8 & Ex. A. That placement is the design

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 2:26-CV-00263-DAD-CKD                                                                 10

*Chabolla* rejected: notice "outside of the user's natural flow of action" is insufficient. 129 F.4th at 1157. Combined with the other defects, the Terms were not conspicuous at all. *See Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019) ("courts decline to enforce agreements where the terms are available only if users scroll to a different screen, complete a multiple-step process of clicking non-obvious links, or parse through confusing or distracting content and advertisements") (cleaned up).

### 4. The Button-Text Mismatch Defeats Unambiguous Assent to the Terms.

"Reasonable conspicuousness alone is not sufficient to bind a user—a user must agree to the terms, not merely see them." *Chabolla*, 129 F.4th at 1158. "[T]he text on an action button matters insofar as it matches an advisal's explanation" and "nothing about the text on an action button by itself can overcome the rule … mandating explicit advisement in advisal language so that there is unambiguous manifestation of assent." *Godun,* 135 F.4th at 713. The advisal must "indicate to the user what action would constitute assent." *Id*. (quoting *Berman*, 30 F.4th at 858). Defendant's checkout page fails that test.

The advisal reads: "By ordering, you agree to our privacy policy and terms of use." Prakash Decl. ¶ 8, Ex. B. But there is no "ordering" button. The only button reads "Continue with Klarna." *Id.* As the Ninth Circuit held on identical facts: "It is up to the user to assume that . . . clicking the '[Continue with Klarna]' button amounts to '[ordering].' . . . [T]he resulting ambiguity is dispositive." *Chabolla*, 129 F.4th at 1158.

The mismatch here is worse than in *Chabolla*. Clicking "Continue with Klarna" does not place an order — it redirects the consumer to Klarna's separate payment portal. That dual function is fatal. *See Seneca v. Homeaglow Inc.*, No. 24-887, 2025 U.S. App. LEXIS 6725, at *4 (9th Cir. Mar. 19, 2025) (refusing to enforce arbitration clause where button "serves a dual purpose: to agree to the scheduled cleaning, and to bind a consumer to a different set of terms and conditions"). On Klarna's "Confirm and pay" screen, Plaintiff encountered Klarna's *own* disclosures – containing three hyperlinked terms and authorizing Klarna "to do a soft credit check to assess eligibility, marketing and other uses." Prakash Decl. ¶¶ 9, 12, Ex. C. That final disclosure does not reference

Defendant's terms, which by then were long forgotten. *see Ramirez v. Trusper Inc.*, No. 24-6434, 2025 U.S. App. LEXIS 27192, at *4 (9th Cir. Oct. 20, 2025) ("assent to one hyperlinked agreement is not assent to a second agreement linked therein unless the first agreement 'clearly and unequivocally refers to the [second agreement] by name and calls it to the parties' attention'").

When Plaintiff finally clicked, "Pay with Klarna," she had been exposed to ten separate hyperlinked terms across two companies' platforms. *Id*. A consumer navigating competing advisals from two companies cannot unambiguously assent to either set — let alone both. *Herzog v. Superior Ct.*, 101 Cal. App. 5th 1280, 321 Cal. Rptr. 3d 93, 114 (Ct. App. 2024) (no assent where webpage "created ambiguity with respect to whether users who clicked" a button "were agreeing" to narrow terms "or whether they were consenting to be bound by all of the terms in the hyperlinked webpage, including the requirement of binding arbitration"). Defendant's checkout presents the same problem: Defendant cannot establish that "the parties all agreed upon the same thing in the same sense." *Id.*

### 5. *Defendant's Cases Are Distinguishable.*

Defendant relies heavily on *Rodriguez v. Wayfair LLC*, No. 2:25-cv-06910-DSF-AGR, ECF 18 (C.D. Cal. Sept. 17, 2025) (Fischer, J.), which it uses to frame this "lawsuit [to] merely a redux of that failed attempt to avoid Defendant's enforceable terms." MTC at 16. Defendant does not discuss the opinion at all. The omission is telling. *Rodriguez* turned on a Defendant's native account-creation page where the button read "Create Account" accompanied by an advisal stating "By creating an account, you agree to our privacy policy and terms of use." *Id.* at pg. 10. The button and advisal matched — precisely what is missing here. Further, *Rodriguez* found that the terms were "reasonably conspicuous" because the "account creation web page is sparse and has few elements" which "can be seen without scrolling." *Id.* at pg. 7. The opposite is true here. Rather than supporting its arguments, *Rodriguez* illustrates why Defendant's motion fails.

Defendant's remaining authorities fare no better. *Gorny v. Wayfair Inc.*, involved a "Place Your Order" button with the advisal "By placing an order, you are agreeing to our Privacy Policy and Terms of Use" directly below — exact button-to-advisal alignment. 2019 U.S. Dist. LEXIS

95619, at *15 (N.D. Ill. June 7, 2019). The advisal also "appeared in clear, conspicuous text" without any intervening elements or screen clutter. *Id.* Similarly, *Nicholas v. Wayfair Inc.*, involved a "Submit Order" button with "By placing this order, you are agreeing to our terms and conditions." Same alignment; same inapplicability. 410 F. Supp. 3d 448, 453 (E.D.N.Y. 2019). Further, in *Nicholas*, the "terms and conditions was clearly visible" and the record showed that the plaintiff actually "clicked on the link which took her to the terms and conditions." *Id.* at 453-54. That is not the case here. Regardless, none of those cases addresses Google One Tap, Klarna, or the Ninth Circuit's current framework under *Chabolla* and *Godun*. *See Rodriguez v. Abercrombie & Fitch Trading Co.*, 2026 U.S. Dist. LEXIS 68165, at *14–15 (S.D. Cal. Mar. 30, 2026) ("The cases Defendant cites upholding similar advisals . . . are district court cases decided prior to the Ninth Circuit's clarification in *Chabolla*.").[1]

### C.    Plaintiff's Claims Fall Outside the Scope of the Arbitration Clause.

Even a valid arbitration agreement would not end this case. Plaintiff's false-advertising claims neither arise from nor relate to the Terms. And Defendant's argument that "any dispute" language sweeps in pre-contractual advertising has been rejected by multiple courts, including this one.

In *Jones v. Penney OpCo, LLC*, the plaintiff alleged false-discount claims similar to the claims here, and the defendant sought to compel arbitration under a terms-of-use clause covering disputes "arising out of or relating in any way" to the plaintiff's contractual relationship. 2025 U.S. Dist. LEXIS 148484, at *18 (E.D. Cal. Aug. 1, 2025) (Drozd, J.) This Court rejected the argument, holding that the claims were not subject to arbitration because they would exist "even if the parties 'honored their contractual obligations in every respect.'" *Id.* at *24–25 (quoting *Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1060 (10th Cir. 2018)).

---

[1] The remaining state-court orders — *Youseff*, *Rolufs*, and *Semeraro* — are summary rulings applying Florida, Missouri, and New Jersey law, respectively without analysis, *Youseff v. Wayfair LLC*, No. COCE24010284 (Fla. 17th Cir. Ct. 2024); *Rolufs v. Wayfair LLC*, No. 19SL-CC02114 (Mo. Cir. Ct. St. Louis Cnty. 2019); *Semeraro v. Wayfair LLC*, No. PAS-L-2146-20 (N.J. Super. Ct. Law Div. 2021).

*Schlueter-Beckner v. SimpliSafe, Inc.* is also on point. 2025 U.S. Dist. LEXIS 146568 (N.D. Cal. July 30, 2025). There, Judge Breyer held that arbitration language covering "any dispute or disagreement . . . arising from or relating to this Agreement" did not reach false-discount claims because the agreement did "not encompass the false-advertising dispute regarding the separate, and earlier in time, sale of its products." *Id.* at *23–24. In so doing, the court explained that "broad and far reaching" arbitration language has "an outer bound." *Id.* at *24–25.

Here, as in *Jones* and *Schlueter-Beckner*, Plaintiff's false advertising claims predate the Terms. Even if Defendant "honored" the terms in every aspect, Plaintiff's claims would still exist.

Defendant's reliance on *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182 (S.D. Cal. 2013), and *Fischer v. Rent-A-Center, Inc.*, No. 2:14-cv-00918-MCE-AC, 2014 U.S. Dist. LEXIS 101478 (E.D. Cal. July 22, 2014), is misplaced. MTC at 18. The statutory claims in both cases grew from the commercial relationship itself — post-enrollment TCPA violations in *Cayanan* and Rosenthal Act debt collection violations in *Fischer*. Plaintiff's claims are different in kind. They do not arise from her relationship with Defendant; they concern how she was fraudulently induced into that relationship in the first instance. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1104 (9th Cir. 2023) ("Amazon's alleged misconduct existed independently of the contract and therefore fell outside the scope of the arbitration provision.").

### D.    The Arbitration Agreement Is Unconscionable.

California evaluates procedural and substantive unconscionability on a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024). Both prongs are present here.

Defendant's motion does not argue that unconscionability is delegated to the arbitrator. That argument is accordingly waived. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).[2]

---

[2] Regardless, the argument would fail on the merits. The Terms are internally contradictory: they provide that the arbitrator decides "the arbitrability of any claim," yet also state that "[i]f a court determines that this class action waiver is not enforceable . . . then the parties agree that that particular claim or request for relief shall proceed in court." Defendant Terms of Use § Jury Trial and Class Action Waiver. That contradiction defeats the clear-and-unmistakable

### 1. *Procedural Unconscionability.*

Procedural unconscionability has two components: whether the contract is one of adhesion, and whether the circumstances of formation generated "oppression or surprise" beyond the baseline adhesion floor. *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089–90 (9th Cir. 2024) (quoting *OTO, LLC v. Kho*, 8 Cal. 5th 111, 126 (2019)). Both are present here.

**Adhesion.** Defendant drafted the Terms and presented them on a take-it-or-leave-it basis: "If you do not agree to these Terms of Use . . . you may not use the Sites." O'Callaghan Decl. Ex. C. No consumer may negotiate any term. There is no opt-out. Under California law, that alone establishes procedural unconscionability. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023) (take-it-or-leave-it adhesion contracts "always contain 'some degree of procedural unconscionability'").

**Oppression and surprise.** The Terms are laden with both. Plaintiff had no time to review the Terms and no reason to — the interface did not prompt review, and the checkout page was a time-sensitive retail flow with a Klarna installment payment pending and promotional banners directing her attention toward completing the transaction, not reading legal terms. Prakash Decl. ¶¶ 8, 10–11, 14. The Terms themselves run approximately 10,000 words; the "Legal Disputes" section alone spans several thousand, with the mass-arbitration protocol consuming more than a thousand words of dense procedural detail that no lay consumer could parse. Plaintiff testifies she is "not acquainted with legal terminology" and had no attorney at the point of assent. *Id.* ¶¶ 16–17.

**Broken hyperlink.** The "Terms of Service" hyperlink in the Google One Tap prompt does not lead to the Terms of Use — on both mobile and desktop, it redirects to the Privacy Policy, an entirely different document that does not contain the arbitration clause. Gucovschi Decl. ¶¶ 6, 8. A

---

standard. *Hageman v. Hyundai Motor Am., Inc.*, Nos. 24-7823, 25-656, 2026 U.S. App. LEXIS 8713, at *5–6 (9th Cir. Mar. 25, 2026) ("The phrase '[the court shall decide] whether this agreement permits class proceedings' in the delegation clause is sufficiently ambiguous that it cannot be clear and unmistakable."). Finally, even if the delegation clause were valid, it is independently unconscionable for the reasons below — including the mass-arbitration provisions. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 688 (9th Cir. 2024) (unconscionability analysis "applies equally to the delegation clause and the agreement as a whole").

misdirected hyperlink to the operative terms is an independent basis for procedural unconscionability. *Hasty v. Am. Auto. Ass'n*, 98 Cal. App. 5th 1041, 1061 (2023). The defect here is worse than *Hasty*: the link not only does not work — it affirmatively directs the consumer to a different document, giving her an incorrect answer about what she has agreed to.

**Internal contradiction.** The Terms represent that "any arbitration shall be conducted in [the parties'] individual capacities only." Yet the Special Additional Procedures for Mass Arbitration contemplate coordinated 30-case batching — and a consumer represented by the same counsel as twenty-four others cannot even file her individual claim. The Ninth Circuit found this contradiction fatal in *Heckman*: the promise of "individual arbitration" is "flatly inconsistent" with the mass-batching protocol. 120 F.4th at 683. That incoherence generates surprise independent of adhesion. *Rios v. HRB Digit. LLC*, 807 F. Supp. 3d 975, 986 (N.D. Cal. 2025) (consumers "would not reasonably anticipate [the company's] complex bellwether and batching scheme").

**Illusory modification.** Defendant "reserves the right, at any time, to change these Terms of Use" — and may do so simply by updating the "Last Updated" date. Defendant Terms of Use § Changes. Continued use constitutes acceptance. Modified Terms apply retroactively to any claim for which the consumer has not yet given notice. *Id.* A consumer who purchased a mattress under one version of the Terms could find her remedial rights rewritten simply by visiting the site to track a shipment or browse for another product. *See Heckman*, 120 F.4th at 682–83 ("[A] customer . . . could then be required to bring any dispute regarding that same purchase before [the arbitration provider] merely because the customer opened Defendants' website at some later date."). An arbitration agreement whose terms can be altered unilaterally, applied retroactively, and accepted unknowingly is not a contract — it is an illusion of one.

### 2.   *Substantive Unconscionability.*

California's substantive-unconscionability test asks whether the terms produce "overly harsh or one-sided results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (Cal. 2000). As the Supreme Court of California recently held, "[w]hen, as in the present case, a high degree of procedural unconscionability is involved in

an arbitration agreement's formation, treating that agreement like other contracts involves closely scrutinizing its terms for unfairness or one-sidedness and resolving ambiguities in meaning against the drafting party." *Fuentes v. Empire Nissan, Inc.*, 19 Cal. 5th 93, 110, 341 Cal. Rptr. 3d 186, 200, 582 P.3d 961, 972-73 (2026). Defendant's Terms fail the test seven independent times, and the defects compound.

           (a)         **The mass-arbitration bellwether regime is substantively unconscionable.**

      The Terms provide that if 25 or more individuals seek to arbitrate similar claims against Defendant, those claims are automatically swept into a "Mass Claims" protocol. Defendant Terms of Use § Special Additional Procedures for Mass Arbitration. From that point forward, the Terms dictate every subsequent step. Each side selects 15 cases — 30 in total — to proceed as bellwethers before separate arbitrators. *Id.* While those cases proceed, every other claim is frozen: "no other cases may be filed or deemed filed in arbitration." *Id.* If the first round does not resolve the remaining cases, the process "shall continue" — round by round, 30 at a time — "until the parties are able to resolve all of the Mass Claims." *Id.* There is no ceiling on the number of rounds. There is no cutoff date. There is no provision for returning claims to court if the process proves unworkable. And a court is expressly empowered to "enjoin the filing or prosecution of arbitrations" that do not comply. *Id.* Defendant retains the right to enforce the protocol against any consumer who attempts to step outside it.

      The Ninth Circuit has twice struck down bellwether provisions of this kind. In *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 684–85 (9th Cir. 2024), the Ninth Circuit held that binding non-bellwether plaintiffs to bellwether outcomes violates fundamental fairness where they have "no notice of the bellwether cases and no opportunity to be heard," "no guarantee of adequate representation," and "no right to opt out," giving defendants "many of the protections and advantages of a class action" while giving "non-bellwether plaintiffs virtually none." The Ninth Circuit reaffirmed the rule a year later in *Pandolfi v. AviaGames, Inc.*, No. 24-5817, 2025 U.S. App. LEXIS 22065, at *30–31 (9th Cir. Aug. 27, 2025), holding that a similar batching provision

"on its own is substantively unconscionable." Defendant's provisions replicate every defect *Heckman* condemned.

*No opt-out, no notice, no voice.* Consumers swept into the bellwether process cannot extract themselves and proceed individually. The Terms tell each consumer only that "the adjudication of your claim might be delayed." The word "choose" is illusory — if 25 or more similar claims exist, the protocol applies automatically. Each consumer thus "has no guarantee of adequate representation . . . and has no right to opt out of the batched cases that will be bound by the results in the bellwether cases." *Heckman*, 120 F.4th at 684. Nor does she have "notice of the bellwether cases [or] opportunity to be heard in those cases." *Id.*

*Bellwether outcomes as de facto precedent.* The Terms provide that "the arbitrator may consider rulings in other arbitrations involving different individuals." Defendant Terms of Use § Arbitration Authority. Defendant will likely argue that this language is permissive, not mandatory. The Ninth Circuit has already rejected that argument: "it is obvious that anything more than an occasional failure to apply precedent established in the bellwether cases would defeat the very purpose of the mass arbitration protocol. Indeed, it is implausible to the point of near impossibility that an arbitrator, absent some compelling reason, would fail to apply the precedent established in the bellwether cases." *Heckman*, 120 F.4th at 685. In proceedings involving the same claims, represented by the same counsel, against the same defendant, it stretches credibility that the parties would not present — and that the arbitrator would not consider — the results from prior bellwether rounds. And because Defendant selects its own 15 cases each round — the weakest first — those outcomes will systematically understate the strength of the claims that remain.

*The "coordinated counsel" trigger.* Batching applies not just when a single firm represents 25 or more claimants, but whenever "counsel for the individuals bringing the claims are the same or coordinated or the claims are otherwise coordinated." Defendant Terms of Use § Special Additional Procedures for Mass Arbitration (emphasis added). That language sweeps broadly — reaching not only counsel who represent multiple claimants, but also "independent counsel who represent other unrelated consumers whose claims are similar." *Pandolfi v. AviaGames, Inc.*, No.

23-cv-05971-EMC, 2024 U.S. Dist. LEXIS 159007, at *21 (N.D. Cal. Sept. 4, 2024), *aff'd*, 24-5817, 2025 U.S. App. LEXIS 22065 (9th Cir. Aug. 27, 2025) (mem.).

The consequences are severe. A consumer can be swept into batching because an unrelated firm she never retained filed "coordinated" claims. Once inside, she loses control of her case: her counsel gets no pro-rata share of bellwether slots; her case is resolved by lawyers she did not select on facts not hers; and her only escape is to hire different counsel — itself a form of coercion. *Rios*, 807 F. Supp. 3d at 991 (forcing claimants to "avoid experienced counsel in favor of less qualified or experienced representation . . . imposes an unjustifiable cost manufactured by [Defendant] for its sole benefit"). For a $255 consumer claim, the realistic prospect of finding alternative counsel is vanishingly low.

*Delay.* The Terms cap arbitrations at 30 at a time, with no ceiling on the number of rounds, no cutoff date, and no mechanism for relief when delays occur. Under this staged bellwether protocol, "[c]laimants forced to wait on the sidelines are entirely dependent on the pace and efficiency of other claimants, arbitrators, and [Defendant] in resolving totally separate disputes." *Rios*, 807 F. Supp. 3d at 990. The predictable outcome is that "claims are likely to languish for years under [Defendant's] mass arbitration protocol." *Id.* at 986; *see also Pandolfi*, 2024 U.S. Dist. LEXIS 159007, at *11–12, *aff'd*, No. 24-5817, 2025 U.S. App. LEXIS 22065 (9th Cir. Aug. 27, 2025) (bellwether provision substantively unconscionable where sequential rounds created systemic delay).

The chilling effect is predictable and substantial. "[C]laims based on a company-wide policy affecting consumers will often be brought by law firms that represent a multitude of claimants, especially when the dollar amounts are small," and "the prospect of delay — on the limited gateway issue alone — likely has a chilling effect on [claimants], deterring them from vindicating their rights." *Pandolfi*, 2024 U.S. Dist. LEXIS 159007, at *19–20, *aff'd*, No. 24-5817, 2025 U.S. App. LEXIS 22065. Plaintiff's $255 claim is the paradigm case. The trigger for mass arbitration here is not hypothetical — the false-discount scheme Plaintiff challenges is company-wide by design.

Against that backdrop, any claim that Plaintiff's delay concerns are speculative fails on its own terms. "In assessing unconscionability, the Court must examine the validity of a contractual provision as of the time of the contract is made — it is a prospective analysis which does not require proof that a particular plaintiff has already been adversely affected." *MacClelland v. Cellco P'ship,* 609 F. Supp. 3d 1024, 1041 (N.D. Cal. 2022). The question is whether the scheme *as drafted* imposes a chilling effect. It does.

Defendant may also invoke *Diaz v. T-Mobile USA, Inc*, where Judge Shubb enforced a T-Mobile mass-arbitration provision. 2026 U.S. Dist. LEXIS 36588 (E.D. Cal. Feb. 20, 2026). *Diaz* is distinguishable on two grounds the court itself emphasized. First, the T-Mobile agreement required bellwether arbitrations to "be resolved in 120 days." *Id.* at *10. Defendant's Terms do not contain a similar target. Second, *Diaz* rested on a threshold finding that the T-Mobile agreement was "not procedurally unconscionable." *Id.* at *9. The opposite is true here. And the *Diaz* court itself acknowledged that the "arbitration novelties" inherent to these mass-arbitration provisions "have forced numerous courts to wrestle with" them in the absence of "clear guidance from the Ninth Circuit." *Id.* Less than thirty days later, Judge Wu reached the opposite conclusion on the same facts. See *Ortiz v. T-Mobile USA, Inc.*, 2026 U.S. Dist. LEXIS 49561, at *5 (C.D. Cal. Mar. 9, 2026) ("Although the MAD Procedures Provision 'encourages' arbitrators to resolve cases within 120 days, a single outlier or protracted case can hold up hundreds of other claims indefinitely.").

The Court, however, does not need to choose between *Diaz* and *Ortiz*. Defendant's Terms contain no resolution target, and the procedural unconscionability the *Diaz* court treated as absent is present here in abundance. *See McKeown v. SAS Retail Servs., LLC*, 2025 U.S. Dist. LEXIS 258039, at *20 (N.D. Cal. Dec. 12, 2025) (invalidating 10-per-case batch procedure because, "unlike in other cases, there is no opt out procedure or default target for the amount of time any single arbitration may take").

*Tolling does not cure the problem.* The Terms toll the statute of limitations only "from the time the first cases are selected for a bellwether proceeding." Defendant Terms of Use § Special Additional Procedures for Mass Arbitration. But no consumer reaches that stage without first

clearing the mandatory informal-dispute-resolution process, which requires a "fully completed Notice" as a "condition precedent to filing any demand for arbitration." Defendant Terms of Use § Mandatory Informal Dispute Resolution. The term "fully completed" is undefined — and Defendant alone decides what satisfies it.

The result is an asymmetrical forfeiture trap. Defendant can challenge the adequacy of a consumer's notice, block her from entering the bellwether queue, and then raise limitations defenses based on delays she did not cause. Claimants have no equivalent mechanism. *Rios*, 807 F. Supp. 3d at 993 ("The tolling provisions do not prevent [Defendant] from asserting statute of limitations defenses if it succeeds in persuading an arbitrator that a Notice was incomplete. By contrast, claimants have no comparable mechanism . . . nor does [the agreement] provide claimants any recourse or judicial review if [Defendant] challenges tolling.").

(b)         **The agreement is harshly one sided and only benefits Defendant.**

Defendant's Terms are permeated by additional unconscionable, illegal, one-sided provisions.

***The one-year claim bar*.** The Terms impose a one-year notice-or-waiver rule on consumer claims: a consumer who fails to send Defendant a "fully completed Notice" within one year of accrual has her claim "WAIVED AND TIME-BARRED." Defendant Terms of Use § Limitation on Liability. California provides UCL claims a four-year statute of limitations and CLRA claims three years. Defendant's rule slashes those periods by up to 75 percent and converts any procedural defect into total forfeiture. Every relevant authority treats that design as substantively unconscionable. *Ponkey v. LLR, Inc.*, No. 24-5729, 2025 U.S. App. LEXIS 28455, at *5–6 (9th Cir. Oct. 30, 2025) (one-year bar "substantially shortens the time to bring a claim," is "unilateral," and forces waiver of California's discovery rule); *Gostev v. Skillz Platform, Inc.*, 88 Cal. App. 5th 1035, 1060 (2023) (one-year limitation reducing UCL and CLRA periods substantively unconscionable).

***The $100 liability cap*.** The Terms cap Defendant's liability at the greater of the amount paid in the preceding twelve months or "USD $100." Defendant Terms of Use § Limitation on

Liability. Such nominal caps are substantively unconscionable under California law because they render statutory remedies illusory. *Armendariz*, 24 Cal. 4th at 104. The cap is also independently void under California Civil Code § 1668 to the extent it shields Defendant from liability for willful misconduct. *New England Country Foods, LLC v. VanLaw Food Prods., Inc.*, 17 Cal. 5th 703 (2025). Defendant's own false-discount scheme is precisely the willful conduct § 1668 is designed to prevent.

### *The $75,000-per-instance liquidated-damages clause and asymmetric liability provisions.*

Three provisions of the Terms, read together, reveal its draconian design. First, Defendant caps its liability to consumers at $100. Second, Defendant imposes on consumers a $75,000-per-instance liquidated-damages penalty for any use of site materials "for the purpose of investigating, supporting, threatening or filing any intellectual property infringement claim against Wayfair" or "for the purpose of developing or using an offering or product directly or indirectly competing with an offering or product from Wayfair." Defendant Terms of Use § Acceptable Use Policy. Third, while consumers must submit every claim to arbitration, Defendant reserves for itself the right to bring its IP claims in court. Defendant Terms of Use § Sole Exceptions.

The liquidated-damages clause compounds without ceiling. Five uses of site materials triggers $375,000. Ten triggers $750,000. Twenty triggers $1.5 million. Every one of those figures stands against a $100 cap on Defendant's own exposure. And the Terms separately "reserve[] the right to seek damages for infringement for copyrighted materials" — meaning the $75,000 per-instance figure is not even the ceiling. *Id.* § Acceptable Use Policy.

The clause's trigger is vague by design. Liability attaches to investigation, not filing — a consumer who reviews Defendant's product pages and concludes no claim exists still owes $75,000 per file. The trigger turns on "purpose," a word Defendant alone gets to characterize in subsequent litigation. A consumer investigating any claim against Defendant cannot know in advance whether her review of Defendant's product photography or pricing histories will later be cast as intellectual-property inquiry. The second prong — "developing or using an offering or

product directly or indirectly competing" with any Wayfair product — reaches any consumer who might one day sell a competing mattress, sofa, or flatware feeder spoon after visiting the site.

No rational attorney or consumer would pursue a $100 claim against Defendant under threat of a seven-figure counterclaim. That is the function, not an incidental effect. *Armendariz*, 24 Cal. 4th at 111 (provisions that "discourage[] the bringing of meritorious claims" are unconscionable).

The clause is also independently void under two California statutes. It violates Cal. Civ. Code § 1671(b) as a penalty masquerading as liquidated damages: a $75,000-per-instance assessment bears no rational relationship to any actual harm Defendant could suffer from a consumer viewing a publicly available product image. And it violates Cal. Civ. Code § 1668 because its object is "directly or indirectly, to exempt [Defendant] from responsibility for [its] own . . . violation of law" by penalizing the very investigation required to expose that violation. *New England Country Foods, LLC.*, 17 Cal. 5th at 708.

(c)    **The class-action waiver violates *McGill* and cannot be severed.** The Terms bar class and collective arbitration and limit injunctive relief to "an individual basis." Defendant Terms of Use § Jury Trial and Class Action Waiver. Under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961–62 (2017), a contractual provision waiving public injunctive relief in any forum is unenforceable. The FAA does not preempt the *McGill* rule. *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 831 (9th Cir. 2019). Plaintiff seeks forward-looking injunctive relief preventing Defendant from continuing its fabricated-discount advertising to the general public. That relief is public in the precise *McGill* sense. Defendant concedes that Plaintiff's public injunctive relief survives regardless of its Motion.

(d)    **The unconscionability permeates the agreement and cannot be severed.** The arbitration scheme contains six independently unconscionable provisions: the mass-arbitration bellwether regime, the one-year claim bar, the $100 liability cap, the $75,000 liquidated-damages penalty, the class-action waiver, and the intellectual-property court-access carve-out. Together, they are designed to make arbitration an inferior forum. Under California law, "[t]he greater the number of unconscionable provisions a contract contains the less likely it is that severance will be

the appropriate remedy." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 487 (2024). Severance is available when the unconscionability is incidental to the contract's central purpose — not when it defines that purpose. Here, the unconscionable provisions *are* the arbitration architecture.

Every court to confront an arbitration scheme like this one has refused to sever. In *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 688 (9th Cir. 2024), the Ninth Circuit warned that severance would create perverse incentives because "companies could be incentivized to retain unenforceable provisions designed to chill customers' vindication of their rights." *See also Pandolfi*, 2025 U.S. App. LEXIS 22065, at *6 (9th Cir. Aug. 27, 2025) (severance would reward "a systematic effort to impose arbitration . . . to secure a forum that works to [the company's] advantage") (emphasis added); *see also Rios*, 807 F. Supp. 3d at 994 (severance of a materially identical mass-arbitration architecture "would be an ineffective half-measure or, potentially, a reward for bad faith corporate actors") (cleaned up). The same conclusion follows here.

Defendant's own drafting confirms that result. The Terms contain no severability clause specific to the arbitration agreement. The only severability-like provision — in the "Other" section — operates as a one-way ratchet: "To the extent that any other provision of the Terms of Use is found to be inconsistent with rights, duties, and requirements of this arbitration agreement, or where the application of such a provision would change or render unenforceable any part of this arbitration agreement, such provision shall be null and void and the terms of this arbitration agreement shall control." Defendant Terms of Use § Other. That clause protects the arbitration agreement from being undermined by other provisions of the Terms but provides no mechanism for severing unconscionable provisions within the arbitration agreement itself. Defendant drafted its arbitration scheme to be inseverable, and this Court should hold it to that choice.

## E.    The Class-Action Waiver Cannot Be Severed.

Defendant asks the Court to "strike Plaintiff's prayer for and allegations seeking money damages because the class action waiver she agreed to in Defendant's Terms effectively extinguishes Plaintiff's ability to recover class-wide damage[s]." MTC at 19–20. The class-action

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 2:26-CV-00263-DAD-CKD                                                    24

waiver cannot be severed and enforced as a stand-alone bar to class relief if arbitration is denied. It is embedded within the same dispute-resolution package as the delegation clause, mass-arbitration protocol, notice precondition, and one-year forfeiture. Under *Heckman*, courts should not sever one favorable term from an integrated, systematically one-sided scheme. 120 F.4th at 685. And if arbitration is denied because the arbitration architecture is unconscionable, Defendant cannot invoke the FAA's solicitude for bilateral arbitration to preserve the class waiver. This case fits the *Discover Bank* pattern: a consumer adhesion contract, predictably small-value claims, and an alleged scheme to mislead large numbers of consumers through phantom discounts. *Heckman*, 120 F.4th at 690 (quoting *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162 (2005)).

### III. CONCLUSION

Defendant has not proven an arbitration agreement exists, much less using evidence from the transaction Plaintiff actually made. Even on a perfected record, the sign-in wrap fails *Chabolla* at both prongs; Plaintiff's pre-contractual false-advertising claims fall outside the clause's scope; and the agreement is procedurally and substantively unconscionable in ways that cannot be severed. The Motion should be denied in its entirety.

Dated:  April 24, 2026                    Respectfully submitted,

By:    /s/ Adrian Gucovschi
          Adrian Gucovschi
          **GUCOVSCHI LAW FIRM, PLLC.**
          Adrian Gucovschi (SBN 360988)
          Nathaniel Haim Sari (SBN 362634)
          165 Broadway, 23rd Floor
          New York, NY 10006
          Telephone: (212) 884-4230
          E-Mail: adrian@gucovschilaw.com

          Frank S. Hedin (SBN 291289)
          **HEDIN LLP**
          1395 Brickell Avenue, Suite 1140
          Miami, Florida 33131
          Telephone: (305) 357-2107
          E-Mail: fhedin@hedinllp.com
          *Attorneys for Plaintiff*