Joanna Forster (SBN 244943)
   JForster@crowell.com
Clay Marquez (SBN 268424)
   CMarquez@crowell.com
**CROWELL & MORING LLP**
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 986-2800
Facsimile:  (415) 986-2827

Tiffany Aguiar (SBN 335827)
   TAguiar@crowell.com
**CROWELL & MORING LLP**
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone:  (949) 263-8400
Facsimile:   (949) 263-8414

*Attorneys for Defendant*
Wayfair LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POOJA PRAKASH, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>WAYFAIR LLC,<br><br>                Defendant. | Case No. 2:26-cv-00263-DAD-CKD<br><br>**DEFENDANT WAYFAIR LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND COMPEL ARBITRATION OR, IN THE ALTERNATIVE, MOTION TO STRIKE**<br><br>Judge:  Hon. Dale A. Drozd |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................... 1

III.  ARGUMENT ........................................................................................................... 2

    A.    Wayfair's 2025 Advisals Sufficed to Bind Plaintiff to Arbitration. ......................... 2

        1.    Right Year, Right Device, Right Screenshot. ............................................... 2

        2.    Plaintiff Had Notice of Wayfair's Terms of Use. ........................................ 4

        3.    Plaintiff Agreed to Be Bound At Account Creation. .................................... 4

        4.    Plaintiff Agreed to Be Bound When She Engaged In a Continuing Relationship With Wayfair. ......................................................................... 5

        5.    Plaintiff Independently Assented to The Terms At Checkout. ...................... 6

    B.    Wayfair's Terms and Arbitration Clause Are Enforceable. ....................................... 8

        1.    The Arbitrator Should Determine Arbitrability and Enforceability. ............ 8

        2.    Plaintiff's Claims Arise Under the Agreement. ............................................ 9

    C.    The Terms of the Arbitration Agreement are Reasonable and Enforceable. ........... 10

        1.    The Arbitration Clause is Procedurally Reasonable. .................................. 10

        2.    Plaintiff Fails to Establish That the Arbitration Agreement is Substantively Unconscionable. ................................................................... 12

        3.    The Court Should Severe—Not Invalidate the Entire Agreement. ............. 15

    D.    The Class-Action Waiver Must Be Enforced as a Matter of Law. .......................... 15

IV.   CONCLUSION ...................................................................................................... 15

CROWELL
& MORING LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Nev. v. City of Las Vegas*,
  333 F.3d 1092 (9th Cir. 2003)........................................................................................... 8

*Benson v. Double Down Interactive, LLC*,
  798 F. App'x 117 (9th Cir. 2020) ................................................................................ 4, 5, 6

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022)............................................................................................ 5, 6

*Britt v. ContextLogic, Inc.*,
  No. 3:20-cv-04333-WHA, 2021 WL 1338553 (N.D. Cal. Apr. 9, 2021) ................................ 3

*Chabolla v. Classpass Inc.*,
  129 F.4th 1147 (9th Cir. 2025)................................................................................. 3, 4, 7, 8

*Grabowski v. C.H. Robinson Co.*,
  817 F. Supp. 2d 1159 (S.D. Cal. 2011) ............................................................................ 14

*Hasty v. Am. Auto. Ass'n*,
  98 Cal. App. 5th 1041 (2023).......................................................................................... 11

*Heckman v. Live Nation Ent., Inc.*,
  120 F.4th 670 (9th Cir. 2024)...................................................................................... 12, 13

*Hernandez v. Event Ticket Ctr., Inc.*,
  No. 2:24-CV-01983-DAD-AC, 2026 WL 618252 (E.D. Cal. Mar. 5, 2026) ................... 4, 5, 6

*Jackson v. Amazon.com, Inc.*,
  65 F.4th 1093 (9th Cir. 2023)......................................................................................... 10

*Jones v. Penney Opco,*
  LLC, No. 2:24-cv-02468-DAD-AC, 2025 WL 2180560 (E.D. Cal. 2025) ....................... 9, 10

*Lee v. DoNotPay, Inc.*,
  683 F. Supp. 3d 1062 (C.D. Cal. 2023)............................................................................. 8

*Lee v. Ticketmaster L.L.C.*,
  817 F. App'x 393 (9th Cir. 2020) ..................................................................................... 11

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) ..................................................................................................... 15

*McKellar v. Mithril Cap. Mgmt. LLC*,
  No. 19-CV-07314-CRB, 2020 WL 1233855 (N.D. Cal. Mar. 13, 2020) .............................. 11

CROWELL
& MORING LLP

*Molina v. Scandinavian Designs, Inc.*,
  No. 13-CV-04256 NC, 2014 WL 1615177 (N.D. Cal. Apr. 21, 2014)..................................... 11

*Nelson v. Louisiana Elec. Rig*,
  No. CV 05-3030 GAF, 2006 WL 5671234 (C.D. Cal. Feb. 22, 2006).................................... 14

*Nicholas v. Wayfair Inc.*,
  410 F. Supp. 3d 448 (E.D.N.Y. 2019) ......................................................................... 8, 12, 13

*Oberstein v. Live Nation Ent., Inc*,
  60 F.4th 505 (9th Cir. 2023)............................................................................................... 4

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013)............................................................................................. 9

*Pandolfi v. Aviagames, Inc.*,
  No. 24-5817, 2025 WL 2463742 (9th Cir. Aug. 27, 2025)...................................... 13

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024)............................................................................................. 12

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017)...................................................................................... 10, 11

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ............................................................................................................. 9

*Rodriguez v. Wayfair LLC*,
  No. 2:25-CV-06910 (C.D. Cal. Sep. 17, 2025) .............................................................. *passim*

*Sanchez v. Carmax Auto Superstores Cal., LLC*,
  224 Cal. App. 4th 398 (2014)............................................................................................ 11

*Schlueter-Beckner v. SimpliSafe, Inc.*,
  No. 3:25-CV-01764 (CRB), 2025 WL 2162948 (N.D. Cal. 2025)....................................... 10

*Seneca v. Homeaglow Inc.*,
  No. 24-887, 2025 WL 852896 (9th Cir. Mar. 19, 2025)......................................................... 7

*Smith v. Spizzirri*,
  601 U.S. 472 (2024) ......................................................................................................... 14

*Snow v. Eventbrite, Inc.*,
  No. 3:20-CV-03698-WHO, 2020 WL 6135990 (N.D. Cal. Oct. 19, 2020)............................ 3

**Other Authorities**

Fed. R. Civ. P. 12(f) ................................................................................................................ 1

CROWELL
& MORING LLP

REPLY ISO MOT. TO DISMISS AND COMPEL
ARBITRATION OR, IN THE ALTERNATIVE, MOT. TO
STRIKE; CASE NO. 2:26-CV-00263

## I.   <u>INTRODUCTION</u>

Plaintiff does not deny that she had constructive notice of Wayfair's Terms of Service ("Terms," attached to Decl. of O'Callaghan ISO Mot. ("O'Callaghan Mot.") Ex. C (Ex. C referred to as "Terms") and its arbitration clause.  She admits she created an account on www.wayfair.com in April 2025, visited the site repeatedly over the next several weeks, and made two purchases—including one alleged—yet, nevertheless seeks to avoid the Terms she repeatedly was notified about and assented to.  In her attempt to avail herself of a judicial forum, Plaintiff presents irrelevant evidence from a few weeks ago—nearly a year after her alleged interactions with Wayfair.  The Court must ignore this as it is a smokescreen designed to distract the Court from her clear assent.

Plaintiff's argument that the Wayfair checkout screen had mismatching advisal and action buttons is also designed to confuse the Court.  The Klarna screen that Plaintiff offered with her Opposition shows that Wayfair has done what the law requires:  the advisal is near the action button, the prominent font and text makes the advisal noticeable, and it is visible on the screen without any scrolling.  Wayfair does even more than the law requires in posting the advisal *twice* on the mobile checkout screen.  The fact that Klarna was the payment processor or on the action button is irrelevant.  Because nearly every online transaction has a payment intermediary, to undo a checkout flow on these grounds would disrupt e-commerce all over the internet.

Plaintiff's arguments that Wayfair's Terms are unconscionable fail because the Terms are procedurally and substantively proper.  Plaintiff has not identified a defective clause, and cannot explain why the arbitration clause cannot be severed.  Every Court that has considered Wayfair's log-in, checkout or Terms has upheld them.  This Court should too, and grant the Motion and compel arbitration, or stay, or strike Plaintiff's claims for money damages pursuant to Rule 12(f).

## II.   <u>FACTUAL BACKGROUND</u>

Wayfair states and agrees to all of the following, which Plaintiff does not deny:

- Plaintiff created an account on www.wayfair.com on her mobile phone on April 26, 2025 using Google One Tap.  An advisal identifying Wayfair's Terms appear on the Google One Tap screen.
- Plaintiff visited Wayfair at least eight times between April 26, 2025 and June 2, 2025.
- On April 30, 2025, and June 2, 2025, Plaintiff made purchases on www.wayfair.com on her mobile phone.

CROWELL
& MORING LLP

- Plaintiff used Klarna—a third party financial intermediary—to pay on June 2, 2025. Plaintiff attached to her declaration an image of the screen she saw at checkout. Wayfair accepts this image as true for the purposes of this Motion.
- Wayfair's March 2025 Terms were in effect at all times relevant in the Complaint.

*See* O'Callaghan Mot. ¶¶ 7–18; *see also* Decl. of O'Callaghan ISO Reply ("O'Callaghan Reply") ¶¶ 5–10. Wayfair's January 2026 Terms are irrelevant.

Plaintiff criticizes Wayfair for submitting a screenshot of the login experience from desktop web (or using a desktop instead of a phone) as opposed to a replica of that mobile web experience generated from a phone. Wayfair attaches to the O'Callaghan Reply declaration a replica of the mobile web Google One Tap account creation experience Plaintiff would have seen from a mobile phone on April 26, 2025. O'Callaghan Reply, Ex. A. Its attributes are: (1) an image within a mobile phone frame, navigated to wayfair.com; (2) uncluttered; (3) visible on the screen without any scrolling, in all black, contrasting against Wayfair's white home page, is the Google One Tap screen; (4) the Google One Tap screen occupies the bottom 1/3 of the image; (5) immediately above the action button, the advisal reads "Use wayfair.com with google" and immediately below it the advisal reads "See this site's privacy policy and Terms of Service" (emphasis original) with the "site" clearly referring to wayfair.com and Terms of Service hyperlinked in a bright blue color; and (6) the advisal and action button are all the way at the bottom of the screen, closet to the keypad on a cell phone where the eye looks, and any typing takes place. This replica of the mobile Google One Tap experience contains all the attributes of effective constructive notice.

## III.  **ARGUMENT**

Plaintiff consented both at account creation and when she purchased the Product to arbitrate claims against Wayfair arising out of the use or sale of the Product.

### A.    **Wayfair's 2025 Advisals Sufficed to Bind Plaintiff to Arbitration.**

#### 1.    **Right Year, Right Device, Right Screenshot.**

As a threshold matter, Plaintiff directs the Court to the wrong evidence at the wrong moment in time. Plaintiff's counsel's screenshots of Wayfair's *current* Google One Tap flow or its *April 2026* testing of Wayfair's hyperlinks is a red herring because Plaintiff's 2026 evidence has nothing to do with the arbitrability of her claims arising from a 2025 transaction. *See* Decl. of Adrian

Gucovschi ¶¶ 2–8, 12–15; *see* Opposition Brief ("OB") 4:20–25. But, what Plaintiff or her lawyer may have seen in April 2026 is irrelevant because enforceability of an arbitration clause turns on whether the relevant agreement was validly presented to the plaintiff at *the time of the transaction* underlying the claim. *See Britt v. ContextLogic, Inc.*, No. 3:20-cv-04333-WHA, 2021 WL 1338553, at *5 (N.D. Cal. Apr. 9, 2021) (finding testimonial and sign-in screenshot of what plaintiff would have seen when she signed-in sufficient); *see also Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2020 WL 6135990, at *6 (N.D. Cal. Oct. 19, 2020) (declining to compel arbitration, in part, because defendant's screenshots were not from when the plaintiffs used the product). Plaintiff's own authority, *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1152, n.2 (9th Cir. 2025), focused on images of the login flow that were in "substantially the same form as [they] would have been presented to [plaintiff]" on the date of the transaction. All that matters is what Plaintiff would have seen at account creation and/or purchase. Wayfair's flow or Terms today is irrelevant.

In addition to offering irrelevant 2026 screenshots, Plaintiff's critique that Wayfair produced only three screenshots, OB 2:6–8, falls flat. There is no magic number of images Wayfair must put into evidence, and Plaintiff has not cited any authority that requires more. Just last year, Judge Fischer granted Wayfair's motion to compel arbitration based on three nearly identical screenshots: sign-in, place order, and Terms webpages. *See* Order, Dkt. No. 18, *Rodriguez v. Wayfair LLC*, No. 2:25-CV-06910 (C.D. Cal. Sep. 17, 2025) (Fischer, J) (attached to Decl. of Joanna Forster ("Forster") Ex. 4, at 8, 12). What matters is that the movant has produced authenticated evidence showing what a user in the plaintiff's position would have seen at the time of the relevant transaction. *See Britt*, 2021 WL 1338553, at *14 (citing *Snow*, 2020 WL 6135990, at *6) (finding that attestation of the design of the interface at the time of the user's transactions, supported by exhibits reflecting that design, sufficient to compel to arbitration). Wayfair did this. Its screenshots from Google One Tap account creation, checkout, and the Terms more than suffice.

The Court has what it needs: testimonials and screenshots from *both* Wayfair and Plaintiff of the account creation flows and checkout flows at the time Plaintiff created her account and made the relevant purchase. *See* O'Callaghan Mot. ¶¶ 6–11, Ex. A; Decl. of Pooja Prakash ("Prakash") ¶ 11, Ex. B. Plaintiff does not produce a single screenshot, mobile screengrab, or contemporaneous

CROWELL
& MORING LLP

REPLY ISO MOT. TO DISMISS AND COMPEL ARBITRATION OR, IN THE ALTERNATIVE, MOT. TO STRIKE; CASE NO. 2:26-CV-00263

document to contradict that record.  Because there is no dispute that the account creation screen that Wayfair offered and the Klarna purchase screen Plaintiff offered are the screens she would have seen at account creation and checkout, the Motion should be granted.

### 2.      Plaintiff Had Notice of Wayfair's Terms of Use.

The gist of the Opposition is that she did not have *actual* notice of Wayfair's 2025 Terms.  *See* OB 5:11–7:9, 8:21–11:6.  But a movant need only put forward evidence that a reasonable user would have constructive notice of the Terms/arbitration clause, which plaintiff does not deny she had, and manifested assent.  *See Oberstein v. Live Nation Ent., Inc*, 60 F.4th 505, 512–13 (9th Cir. 2023) (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) ("To form a contract under California . . . law, there must be actual or *constructive notice* of the agreement and the parties must manifest mutual assent") (emphasis added); *see also Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 118 (9th Cir. 2020) (reasoning that the question is whether a "reasonably prudent user would have constructive notice of those terms").  The question is not whether Plaintiff read, remembered, or understood the Terms, but whether a reasonable consumer in her position had constructive notice that they would be bound to them.  *See Hernandez v. Event Ticket Ctr., Inc.*, No. 2:24-CV-01983-DAD-AC, 2026 WL 618252, at *9–10 (E.D. Cal. Mar. 5, 2026) (Drozd, D.) (analyzing transaction based on the "reasonable user" and not the plaintiff).  Thus, Plaintiff's attestations that she did not read the Terms or did not have time to read the Terms are legally irrelevant.  *See Chabolla*, 129 F.4th at 1154 (reasoning that constructive notice plus manifestation of assent suffices).  Plaintiff's contacts with Wayfair meet that standard.

### 3.      Plaintiff Agreed to Be Bound At Account Creation.

Plaintiff's creation of a Wayfair account using Google One Tap is fatal to her Opposition because the advisal on Google One Tap put her on *constructive notice* of Wayfair's Terms.  To put a user on constructive notice of online Terms/arbitration clause, the advisal must be conspicuous.  Together, *Rodriguez* (Forster Ex. 4), and Plaintiff's authorities *Benson*, 798 F. App'x 117, and *Hernandez*, 2026 WL 618252, stand for the proposition that terms must be hyperlinked in a contrasting color and in similar sized font on a non-cluttered page, near the action button, visible

///

on the screen without scrolling.[1]  *Cf. Berman,* 30 F. 4th at 861 (finding that advisal in smaller, all gray font, with no contrasting color to denote the hyperlinked text does not pass muster).

Here, any/all the Google One Tap screens attached to the O'Callaghan declarations suffice to show that Plaintiff was on constructive notice.  O'Callaghan's initial declaration, Ex. A, offered a screenshot of the Google One Tap screen accessible from desktop: like in *Rodriguez,* (Forster Ex. 4, at 8-9, 12) that screen had the Terms hyperlinked in a different, bright color, and the advisal was directly below the action button, in freestanding text.  In response to Plaintiff's critique of that screenshot being generated from a desktop, O'Callaghan attached to his instant Declaration a replica of the mobile experience he generated from a telephone, which demonstrates the Google One Tap experience Plaintiff had on April 26, 2025 from her phone.   This screen provided even *more prominent* notice to Plaintiff.  The Google One Tap experience occupies nearly 1/3 of the screen and is visible without any scroll.  The advisal sits at the bottom of the screen close to the keyboard, to which the eye is drawn.  The advisal sandwiches the action button, clearly disclosing to users that to "Use wayfair.com" the user must "Continue," and then specifically says "See this site's privacy policy and Terms of Service" (emphasis original) in blue hyperlinked font.  O'Callaghan Reply, Ex. A.  Like in *Rodriguez,* and unlike in *Berman* and *Benson,* the screen is uncluttered, the advisal is visible without scrolling, in contrasting color and font, and in close proximity to the action button.  Regardless of which screen the Court reviews, Plaintiff was on constructive notice of Wayfair's terms at account creation.

### 4.    Plaintiff Agreed to Be Bound When She Engaged In a Continuing Relationship With Wayfair.

Next, Plaintiff ignores that her ongoing relationship with Wayfair binds her to Wayfair's Terms and to now arbitrate.  Unlike in *Rodriguez,* Forster Ex. 4 at 7-8, where the plaintiff created her account on the day of the alleged purchase, Plaintiff created her account weeks before the

---

[1] In *Rodriguez,* Forster Ex. 4, p. 6, the Court concluded that the plaintiff was on constructive notice of Wayfair's Terms because they were hyperlinked below the action button and visible without scrolling. *Hernandez,* 2026 WL 618252, at *14, 17, is distinguishable because the company's terms were hyperlinked in light font that did not contrast against the white webpage, and the disclosure was in the last line of a significant amount of other text.  *Benson,* 798 F. App'x at 118-19, is also distinguishable because the terms were "accessible through a gray 'App Terms' hyperlink on a pop-up screen that [was] below and smaller than all other text on the screen."

purchase alleged in the Complaint, visited Wayfair at least 8 times in the 6-week interim between account creation and the purchase alleged, and made a total of two purchases in that time period. *See* O'Callaghan Mot. ¶¶ 7, 12–19; O'Callaghan Reply ¶¶ 9–10.  Plaintiff disputes none of this.

Plaintiff incorrectly invokes *Benson*, 798 F. App'x 117, for the proposition that repeated use of a website does not by itself constitute constructive notice.  OB 8:15–19.  *Benson*, dealt with the question of whether mere engagement with a website (without account creation) sufficed to put the plaintiff on constructive notice.  And *Hernandez*, 2026 WL 618252, at *5, is also distinguishable because that case dealt with a single concert ticket purchase; the plaintiff did not visit the website multiple times, much less create an account.  Here, Plaintiff did not merely browse or even just make one lone purchase; rather, she affirmatively created an account—a deliberate act that conferred benefits (saved preferences, order history, faster checkout) on her—visited Wayfair at least 8 times between April 26 and June 2, 2025, and made multiple purchases.  *See* O'Callaghan Mot. ¶¶ 7, 12–19; O'Callaghan Reply ¶¶ 9–10.  Because Plaintiff intentionally availed herself of Wayfair's services, she is bound by its Terms and obligated to arbitrate.

### 5.      Plaintiff Independently Assented to The Terms At Checkout.

Plaintiff independently assented to the Terms at checkout, *twice*, regardless of her means of payment.  On April 30, 2025, she bought a product from Wayfair and paid via Klarna.  O'Callaghan Reply ¶ 10.  She did not object to that transaction, and returned to www.wayfair.com again and placed the June 2, 2025 purchase at issue, again using Klarna to pay.  *Id*. ¶ 9.

Plaintiff does not dispute that the advisal "By ordering, you agree to our privacy policy and terms of use" appeared for her at checkout.[2]  Under the weight of the authorities, this advisal was sufficient to bind her to the Terms both on April 30, 2025 and June 2, 2025.  Again, *Rodriguez*, Forster Ex. 4, *Benson*, 798 F. App'x 117, *Hernandez*, 2026 WL 618252, and *Berman*, 30 F. 4th 849, stand for the proposition that an advisal is conspicuous and puts the user on constructive notice if it, *inter alia*, is in a different colored hyperlink, is near the action button and is visible without scrolling.  These are all attributes of Wayfair's notice at checkout the disclosure informing the

---

[2] Wayfair accepts for the purposes of this Motion that the checkout screen Plaintiff attached to her declaration was the screen she saw at checkout.  *See* Prakash ¶ 11, Ex. B.

consumer she will be bound by the Terms is listed not just once–-but twice.  Both disclosures are directly below the action buttons and visible without any scrolling.[3]  The page is not cluttered.  The notices are in purple font—the Wayfair palette color—is in similar sized font as other text and are hyperlinked.

Plaintiff's reliance on *Chabolla* is misplaced because the court considered mismatched advisals and action buttons across a multi-step, multi-screen sign-up process.[4]  Here, all the elements are on one page, visible without any scroll.  And unlike in *Chabolla* where the disclosure was in light colored font and at a distance from the action button, Wayfair's disclosure at checkout was in black with purple hyperlinked text, and directly below the action button—twice.  *See* O'Callaghan Mot. ¶ 21; Prakash Ex. B.[5]  It is notable that *Rodriguez*, Forster Ex. 4 at 12, which was decided *after* Chabolla found that Wayfair's advisals and Terms were enforceable; as has every court in the country to consider Wayfair's Terms and sign-up flow.  *See* O'Callaghan Mot. 16:10–27.  Because Plaintiff had constructive notice of Wayfair's Terms, the Motion should be granted.

Faced with the fact that the checkout advisal put her on constructive notice, Plaintiff resorts to arguing that a "mismatch" between the action button above the disclosure saying "Continue with Klarna" rather than "Place Your Order" rendered the disclosure defective.[6]  OB 11:8–12:13.  The argument fails both as a matter of law and common sense.  *First*, unlike in *Chabolla*, where the action button and advisal did not demonstrate a clear connection that the user was taking binding, final action, the advisal here specifically states "by ordering, you agree."  The action button then reads "Continue with Klarna."  By connecting "ordering" and the user's "agree[ment]" with

---

[3] Plaintiff's reliance on *Seneca v. Homeaglow Inc.,* No. 24-887, 2025 WL 852896, *1 (9th Cir. Mar. 19, 2025) is factually and legally distinguishable because the plaintiff there was not shown or asked to assent to the terms until after the purchase, which is not where consumers are accustomed to being asked to agree to terms.  The consumer, post-purchase, would have "no reason to expect the post-hoc imposition of terms and conditions to the previous purchase…when the consumer is not purchasing anything further but merely scheduling a cleaning they've already purchased."  *Id.* (internal quotes omitted).  Wayfair presented the advisal to Plaintiff at the point of purchase.

[4] *Rodriguez*, Forster Ex. 4 at 10, noted:  "*Chabolla*, however, is distinguishable . . . the assent process was spread 'across three separate pages and . . . manifestation of assent [was] constructed from three different action buttons."

[5] The majority in *Chabolla*, 129 F.4th. at 1155, noted the lack of any continuing relationship between the parties.  Here, Plaintiff visited Wayfair's website at least 8 times, made multiple purchases, and chose to create an account, signaling a continuing relationship.  O'Callaghan Mot. ¶¶ 7,12.

[6] Plaintiff relies heavily on *Chabolla v. Classpass Inc.*, 129 F.4th 1147 (9th Cir. 2025), which is on *en banc* review.

-7-

continuing via a known payment processor, a reasonable consumer is put on clear notice of being bound. None of the ambiguity found in *Chabolla* is present here.

The Court in *Nicholas v. Wayfair Inc.,* 410 F. Supp. 3d 448, 454 (E.D.N.Y. 2019), which Plaintiff cites, found that regardless of the action button's text, there is no mismatch if clicking the action button constitutes a purchase on the underlying platform. So long as the advisal and the action button are close to one another, they do not need to match. *See id.* On this, *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1075 (C.D. Cal. 2023) (Fitzgerald, J.), is analogous: the court concluded that the "language mismatch" between "By signing up or signing in" and "Continue" "did not undermine assent" because the "Continue" button was located directly above reasonably conspicuous and explicit language putting users on notice that continuing was assent to the terms.

*Second,* as a matter of common sense, a consumer who shops on www.wayfair.com, adds an item to their cart, and proceeds to checkout knows that they are placing an order with Wayfair, regardless of whether they use Klarna or a credit card as their payment processor. Consumers know they are not buying goods *from* Klarna, just like they know they are not buying goods *from* Visa. Also, to consummate a transaction using Klarna, the user must navigate to an intermediary site to enter his/her Klarna credentials. Any reasonable consumer using Klarna to pay knows that "Continue with Klarna" means they are approving the order on Wayfair but transitioning to Klarna to finalize the transaction. The Wayfair advisal specifically says that "by ordering, you agree", ordering requires entering a chosen payment method.[7]

**B.     Wayfair's Terms and Arbitration Clause Are Enforceable.**

Next, Plaintiff seeks to avoid dismissal by arguing the Terms are unconscionable. Not so.

**1.     The Arbitrator Should Determine Arbitrability and Enforceability.**

As an initial matter, the Arbitrator must decide in the first instance whether the matter is arbitrable and if the terms and arbitration clause are enforceable.[8] Where the parties clearly

---

[7] Plaintiff tries to paint Klarna as a unique payment approach, but it is akin to a consumer paying with a credit card; in those situations, a consumer is subject to and required to accept MasterCard, Visa, etc.'s terms in addition to the retailer's terms.

[8] While Plaintiff contends Wayfair waived a "delegation" argument by not raising it in its Motion, OB 14:23–24, a party can raise "new" arguments in a reply that directly respond to arguments raised in the Opposition. *See ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1106 n.14 (9th Cir. 2003) (denying

delegate questions of arbitrability and enforceability to the Arbitrator, the district court should honor the parties' intention.  *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (finding the arbitrator is the one who should decide); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (deferring plaintiff's argument that the arbitration agreement was unconscionable to the arbitrator).  Wayfair's Terms contain a separate, freestanding, bolded section on "Arbitration Authority" which says:  the "arbitrator has the sole authority to and shall address all claims and arguments . . . concerning the formation, legality and enforceability of this arbitration clause, the scope of this clause, and the arbitrability of any claim or issue."  Terms at 6. Whether Plaintiff's claims are within the scope of the arbitration clause and whether the Terms are enforceable are for the arbitrator to decide.[9]

### 2.    Plaintiff's Claims Arise Under the Agreement.

Next, Plaintiff contends that her claims fall outside of the arbitration clause because they are pre-contractual claims; because the conduct alleged in the Complaint induced her into a relationship with Wayfair, it does not relate to a transaction arising under the Terms.  This is incorrect.

As an initial matter, there is nothing pre-contractual about Plaintiff's claims.  It is undisputed she created an account on Wayfair on April 26, 2025.  She then contends on June 2, 2025 she purchased a product with a strike through price and that she would not have done so had she known that the strike through was a false discount.  Compl. ¶¶ 43, 46.  By the time she saw the allegedly false discount and purchased the Product, she was already an account holder at Wayfair.  Thus, her contention that her claims are pre-contractual so the arbitration clause does not reach, *see e.g., Jones v. Penney Opco*, LLC, No. 2:24-cv-02468-DAD-AC, 2025 WL 2180560 (E.D. Cal. 2025) (Drozd, D.) (finding the false advertising claim was pre-contractual because the parties had not entered into an agreement relating to the product), is misplaced.

Second, Plaintiff's claims are arbitrable because they relate to or arise from the services offered in the Terms.  A plaintiff's claim is not arbitrable only if it does not relate to the arbitration

---

motion to strike "'new' arguments" raised in reply brief that "were a reasonable response to points made in the [opposing party's] answering brief.")

[9] The Court can also *sua sponte* stay this case in favor of arbitration.

agreement or the services provided thereunder.  For example, in *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1104 (9th Cir. 2023), Amazon's monitoring of its drivers' off-duty social media activity was not arbitrable because it was unrelated to the driver-employer relationship at issue in the parties' agreement.  In *Schlueter-Beckner v. SimpliSafe, Inc.*, No. 3:25-CV-01764 (CRB), 2025 WL 2162948, at *9 (N.D. Cal. 2025), OB 13:17-24, the false advertising claim was not arbitrable because it arose from a hardware purchase that predated the agreement with an arbitration clause and was unrelated to the services provided in that agreement (alarm monitoring service).  *Jones*, OB 14:14-21, is no different.  There, the false-discount claim (like that at issue here) was not arbitrable because the arbitration agreement did not govern the sale, but a membership in the company's rewards program. *Jones*, 2025 WL 2180560, at *7–9.

Plaintiff's claims are within the explicit ambit of the arbitration provision, which requires arbitration of "[a]ny dispute . . . arising from or relating in any way to:  (1) these Terms of Use . . . and the relationships which result from these Terms of Use; (2) your use of any website owned or operated by Wayfair . . . or (3) any products or services sold or distributed by Wayfair." Terms at 5.  Scope "shall be interpreted broadly".  See Terms Plaintiff's claims are arbitrable because they expressly and inherently arise from her use of the www.wayfair.com website.[10]  Separately, because her claims arise from the sale of a product she admits she bought on Wayfair, they are arbitrable. Because Wayfair's Terms require arbitration of "any claims" relating to the Agreement, and because Plaintiff's claims relate to her relationship with Wayfair, her use of its site, and her purchase of its products, the Motion should be granted.

### C.     The Terms of the Arbitration Agreement are Reasonable and Enforceable.

#### 1.     The Arbitration Clause is Procedurally Reasonable.

Wayfair's Terms are procedurally reasonable.  Plaintiff failed to carry her burden of showing that an aspect of the arbitration clause is unconscionable.  *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (holding that plaintiffs opposing a motion to compel arbitration bear the burden to prove unconscionability).   Plaintiff advances five theories of

---

[10] Even if the Court accepted Plaintiff's contention that Wayfair induced her into a relationship, OB 14:7–9, her claims are still arbitrable because her claims relate to the "the relationships which result from these Terms of Use."

CROWELL
& MORING LLP

-10-

unconscionability—adhesion, oppression and surprise, broken hyperlink, internal contradiction, and illusory modification, OB 15:6–16:22, but none has merit.

*First*, contrary to Plaintiff's argument, adhesion contracts are not *per se* unconscionable under California law.  *See Poublon*, 846 F.3d at 1260–61; *see also Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 402 (2014) (confirming trial court's finding "that the agreement is required does not make it unenforceable, absent other factors").  Rather, courts apply a sliding scale requiring a showing of both procedural *and* substantive unconscionability before a contract will be deemed unenforceable—even where some degree of procedural unconscionability exists, the absence of substantive unconscionability is fatal to Plaintiff's argument.  *See, e.g.*, *McKellar v. Mithril Cap. Mgmt. LLC*, No. 19-CV-07314-CRB, 2020 WL 1233855, at *5 (N.D. Cal. Mar. 13, 2020) (compelling plaintiff's claims to arbitration where plaintiff failed to demonstrate any substantive unconscionability).

*Second*, without any supporting authority, Plaintiff argues that Wayfair's Terms are oppressive and surprising because she did not have time to review the Terms and had no reason to do so.  OB 15:12–19.  But as explained above, whether Plaintiff actually saw, reviewed, or read the Terms is irrelevant, so long as she had constructive notice.  *See Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020) (*quoting Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2021)) ("[A party] 'cannot avoid the terms of [the] contract on the ground that he . . . failed to read it before signing'").  It is enough that Plaintiff assented to Wayfair's Terms at account creation and/or purchase, *see, e.g.*, *Molina v. Scandinavian Designs, Inc.*, No. 13-CV-04256 NC, 2014 WL 1615177, at *3 (N.D. Cal. Apr. 21, 2014) ("[O]ne who accepts or signs an instrument . . . is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it."), and she has not cited any law supporting that one's own failure to read renders the counterparty's paper unconscionable.

*Third*, Plaintiff's argument that the hyperlink in the 2026 Terms routes to the current Privacy Policy, OB 15:20–16:5, is, as discussed above, *supra* Section A, irrelevant and does not render the 2025 Terms unconscionable.  Plaintiff has not refuted that the hyperlink on Google One Tap led to Wayfair's 2025 Terms.  *See* O'Callaghan Mot. ¶ 11; *cf. Hasty v. Am. Auto. Ass'n*, 98 Cal. App. 5th

1041 (2023) (noting the hyperlink led to a defunct page denying further access).

*Fourth*, Plaintiff argues that Wayfair's arbitration agreement is internally contradictory. OB 16:5–13. Plaintiff wrongly contends that the promise of "individual arbitration" is irreconcilable with the mass-arbitration batching protocol, invoking *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024). Plaintiff's characterization of the protocol as "coordinated 30-case batching" that prevents a consumer from filing an individual claim, OB 16:7–8, is inaccurate. The protocol is not triggered unless 25 or more similar disputes are filed by the same or coordinated counsel. Terms at 6. *Heckman* is not to the contrary. There, the Ninth Circuit condemned New Era ADR's protocol because it funneled thousands of claims through a single bellwether structure administered by a provider Live Nation itself had selected, with no meaningful individual process available to non-bellwether claimants. *See Heckman,* 120 F.4th at 683. What was labeled "individual arbitration" was in practice a coordinated mass proceeding. Wayfair does the opposite—it mandates separate arbitrators for each case at every stage and, critically, routes unresolved claims to court rather than trapping them in an unworkable arbitral process. Terms at 6. The structural coercion *Heckman* condemned is absent here.

*Finally*, Plaintiff's argument that Terms are illusory because of a unilateral modification clause is speculative. OB 16:13–22. Plaintiff does not identify a single modification Wayfair made to the Terms in the period between when she created her account and she made her purchase. Courts have consistently held that a unilateral modification clause does not render an agreement illusory absent an actual adverse modification. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480 (9th Cir. 2024) (citation omitted) ("[T]he implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable."). Indeed, in *Nicholas*, 410 F.Supp.3d at 456, the court analyzed Wayfair's Terms and agreed that the unilateral right to modify an agreement does not alone render the agreement unenforceable. Speculation does not void an otherwise enforceable agreement.

### 2. Plaintiff Fails to Establish That the Arbitration Agreement is Substantively Unconscionable.

Plaintiff also fails to prove that ***any*** of the Terms are substantively unconscionable. Plaintiff advances a long list of substantive unconscionability arguments—a mass-arbitration procedure, a

$100 liability cap, a one-year claim bar, and a $75,000-per-instance liquidated damages clause.  OB 16:23–23:21.  None withstands scrutiny,[11] and several rest on false descriptions of the Terms.

**Mass Arbitration Protocol.**  Plaintiff repeatedly mischaracterizes Wayfair's mass arbitration protocol.  *First*, the Terms provide that if 25 or more individuals seek to arbitrate similar claims, each side selects 15 cases (30 total) to proceed individually before separate arbitrators, with successive rounds continuing in the same manner until all claims are resolved.  Terms at 6.  Plaintiff's description of an uncapped, unstructured process with no mechanism for relief ignores the staged architecture the Terms actually provide.  OB 17:6–18:2.

*Second*, Plaintiff misrepresents the preclusion language in the Terms.  Unlike in *Heckman,* 120 F.4th at 683–85, which bound non-bellwether claimants to bellwether outcomes without an individual process or path forward, the arbitration award "shall be binding only between you and Wayfair and shall have no preclusive effect in any other arbitration or proceeding involving a different party."  Terms at 6.  Wayfair's Terms expressly prohibit preclusive effect across proceedings.  Plaintiff does not engage with this provision at all—because it is fatal to her.

And while Plaintiff invokes *Pandolfi v. Aviagames, Inc.*, No. 24-5817, 2025 WL 2463742 (9th Cir. Aug. 27, 2025), for the point that the "coordinated" trigger sweeps in independent counsel representing unrelated consumers, OB 18:22–19:2, the court in *Pandolfi* actually construed different language.  Moreover, Wayfair's Terms tie the trigger to whether "counsel for the individuals bringing the claims are the same or coordinated or the claims are otherwise coordinated"—language directed at counsel of record for the specific claimants in the proceeding, not at any hypothetical strategic alignment among unrelated firms.  Terms at 6.  Plaintiff's expansive reading would require the Court to disregard that limitation.

*Third*, on tolling, Plaintiff identifies a purported gap between completion of informal dispute resolution and bellwether selection.  OB 20:25–21:4.  But, two separate tolling provisions operate in combination.  The mandatory informal dispute resolution section provides that "[t]he statute of limitations and any filing fee deadlines shall be tolled while the parties engage in this process."

---

[11] Plaintiff relies on *Nicholas*, in which the court examined Wayfair's Terms (under New York Law) and found them substantively enforceable.  *See Nicholas*, 410 F.Supp.3d 448 at 455–56.

Terms at 5.  The mass arbitration section separately tolls limitations "from the time the first cases are selected for a bellwether proceeding until your claim is selected for a bellwether proceeding, withdrawn, or otherwise resolved." *Id.*  Together, these provisions cover the pre-selection period Plaintiff identifies as unprotected.

***One-Sided Terms.***  Plaintiff's argument that the one-year claim bar, $100 liability cap, and $75,000-per-instance liquidated damages clauses are substantively unconscionable fail.  Plaintiff characterizes the $100 cap as nominal and argues it renders statutory remedies illusory.  OB 21:26–22:6.  The Terms cap liability at the greater of $100 or amounts paid in the preceding twelve months.  Terms at 5.  Plaintiff purchased a mattress for $255.99.  Compl. ¶ 43.  Her applicable cap is therefore at least $255—more than her claimed individual damages.  The cap is not nominal to her.  And to the extent the cap independently presents legal issues, the remedy is severance, not invalidation of the entire agreement.  Plaintiff next argues that a $75,000-per-instance clause for use of site materials and intellectual property infringement claims combined with Wayfair's $100 consumer liability cap is unconscionable.  OB 22:7–23:13.  The $75,000 provision is in the Acceptable Use Policy and targets only use of Wayfair's site materials in connection with IP claims.  Terms at 3.  It does not apply to a consumer pursuing false-discount claims in arbitration.  The IP court carve-out is inapplicable for the same reason.

Finally, Plaintiff's attack on the one-year limitations period is a non-issue because Plaintiff filed her Complaint in January 2026, within the one-year period.[12]  Even if the Court were to find the limitations provision unconscionable—which it should not, for the reasons above—the appropriate remedy is severance, not invalidation of the entire arbitration agreement.  *See, e.g.*, *Grabowski v. C.H. Robinson Co.,* 817 F. Supp. 2d 1159 (S.D. Cal. 2011) (finding substantively unconscionable provisions could be severed from an arbitration agreement which was not "permeated by unconscionability"); *Nelson v. Louisiana Elec. Rig*, No. CV 05-3030 GAF (AJWx), 2006 WL 5671234, at *7 (C.D. Cal. Feb. 22, 2006) (finding an unconscionable term could be severed because it was "collateral to the agreement's main purpose").

---

[12] To the extent the Court is concerned, it can stay the case and compel arbitration; the filing of any arbitral demand will then relate back to the Complaint for statute of limitations purposes. *See Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024) (holding that stay of case preserves relation back doctrine for statute of limitations).

### 3.   The Court Should Severe—Not Invalidate the Entire Agreement.

Plaintiff claims the Terms contain no severability clause specific to the arbitration clause and invokes only an "Other" clause that purportedly protects arbitration from external provisions but cannot sever unconscionable internal ones. OB 24:14–23. That is wrong. Severability is stated multiple times and ways in the Terms. *First*, in the General Information section there is a broad severability clause applicable to the Terms as a whole: "In the event that any provision of this Agreement is determined to be illegal or unenforceable, the balance of the Agreement shall continue to be fully valid, binding, and enforceable." Terms at 7. *Next*, the Terms have a severability mechanism specific to the class action waiver: if a court determines that the class action waiver is unenforceable as to a particular claim, "that particular claim or request for relief shall proceed in court but shall be stayed pending arbitration of the remaining claims." *Id.* at 6. Any invalid or unenforceable portion of the agreement—including within the arbitration provisions—be severed, with the remainder continuing in full force and effect.

### D.   The Class-Action Waiver Must Be Enforced as a Matter of Law.

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) requires the Court to strike any class action for money damages as a matter of law. *Cf.* OB. 23:14–21. *McGill* does not void the arbitration clause, but severs the offending waiver and allows the remainder to proceed. Plaintiff's claims for individual damages must proceed to arbitration.

## IV.   **CONCLUSION**

The Court should: (1) grant the Motion to Dismiss and Compel Arbitration; or (2) in the alternative (a) stay pending arbitration; or (b) strike Plaintiff's demand for money damages.

Dated: May 8, 2026

CROWELL & MORING LLP

By: _____
Joanna Forster
Clay Marquez
Tiffany Aguiar

*Attorneys for Defendant*
Wayfair LLC

CROWELL
& MORING LLP

-15-