Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM, PLLC**
165 Broadway, 23rd Floor
New York, New York 10006
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Telephone: (305) 357-2107
E-Mail: fhedin@hedinllp.com

*Counsel for Plaintiff and Putative Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| POOJA PRAKASH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAYFAIR LLC,<br><br>Defendant. | Case No. 2:26-cv-00263-DAD-CKD<br><br>**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF HER OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION**<br><br>Judge: Hon. Dale A. Drozd |

Pursuant to E.D. Cal. L.R. 230(m), Plaintiff Pooja Prakash brings to the Court's attention a recent opinion captioned *Gustin v. Club Demonstration Servs.,* No. 1:25-cv-00579 JLT FJS, 2026 U.S. Dist. LEXIS 148507 (E.D. Cal. July 6, 2026), attached as **Exhibit A**. This opinion is relevant to Plaintiff's Opposition to Defendant's Motion to Dismiss and Compel Arbitration (ECF Nos. 13, 16).

In *Gustin*, the court denied a motion to compel arbitration, finding that the bellwether provision in an employment agreement was procedurally and substantively unconscionable. First, the court found that the arbitration agreement was procedurally unconscionable because: (1) the agreement is "filled with statutory references and legal jargon," including "interrogatories," "bellwether procedures," and "competent jurisdiction," as well as "discovery" and "stayed" which are "specific and different when they appear in a contract"; (2) the agreement was "long," including "more than 1,500 words (not counting the JAMS rules, which it incorporates, and which are even longer)"; and (3) when "printed on ordinary, letter-sized paper in a twelve-point, singled-spaced typeface with standard margins, it is more than three pages long." *Id*. at *15. This is relevant to Section II.D.1 of Plaintiff's Opposition, which addresses the same element of surprise due to the length of the agreement and Plaintiff's lack of acquaintance with its legal terminology.

The *Gustin* court also held that the agreement's bellwether provision was substantively unconscionable because: (1) the employees could not "opt out of the process"; (2) the resulting delay is "not necessarily short" given that "[a]rbitration can take several months"; and (3) that delay "may in fact be longer here than average if there are any disputes about whether the bellwether procedures apply…which would need to be resolved in '[a] court of competent jurisdiction,' rather than arbitration." *Id.* at *29-30. "This one-sided procedure is inherently unfair." *Id.* This is relevant to Section II.D.2(a) of Plaintiff's Opposition, which addresses the lack of opt-out rights and the delay triggered by Defendant's bellwether provision.

Finally, the *Gustin* court found the agreement to be one-sided because "[i]t is difficult to imagine any circumstances in which CDS might assert ten or more similar claims against an employee," and that the "ten-case cap is, by all indications, an arbitrary ceiling… designed

specifically and primarily to minimize CDS's expenses and control its own exposure." *Id.* at *30-31. The court also noted, without deciding, that the bellwether procedure "has elements that raise doubts about whether the Federal Arbitration Act applies to it at all." *Id.* at *32. "By definition, some employees will go first. Their arguments, their evidence, and their results will influence the arguments, evidence, and results that other employees employ or obtain—if not formally, then practically. That is the nature of bellwether cases. If the results of the bellwether cases played no role in the later cases, they would not be bellwether cases." *Id.* at *32. The court also noted that:

> As the arbitration agreement itself explains, 'after one or a few cases are tried to verdict, most or all of the other cases settle or otherwise resolve themselves.' And so, in addition to pursuing the one-sided goal of managing the company's costs, the bellwether procedure forces many employees to arbitrate against the backdrop of their predecessors' litigation decisions, whether good or bad.

*Id.* at *32-33. This is relevant to Section II.D.2(a) of Plaintiff's Opposition, which addresses how Defendant's bellwether provision functions as *de facto* precedent.

Based on the foregoing, the *Gustin* court refused to sever the bellwether provision, agreeing with the "majority position" because "should there be a massive influx of similar claims by the thousands of people it employed" the employer would "dispatch of the claims against it cheaply, at a relaxed and convenient pace, and without any of the rules, precedent, or risks that would attend to a class action in a state or federal court." *Id.* at *45-46. "Severing the bellwether provisions could also lead to confusion and inconsistent outcomes." *Id.* This is relevant to Sections II.D.2(d) and II.E of Plaintiff's Opposition, which address why the bellwether provision and class-action waiver should not be severed from Defendant's arbitration agreement.

Dated: August 19, 2026

Respectfully submitted,

By: */s/ Adrian Gucovschi*

Adrian Gucovschi
**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (SBN 360988)
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Telephone: (305) 357-2107
E-Mail: fhedin@hedinllp.com
*Attorneys for Plaintiff*